PRESENT:  All the Justices

COMMONWEALTH OF VIRGINIA

v.  Record No. 151163

JAYVON LARTAY BASS

OPINION BY
JUSTICE WILLIAM C. MIMS
June 2, 2016

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals misapplied the ends of justice exception to Rule 5A:18 and erroneously reversed the defendant's conviction due to a variance between the indictments and the evidence presented at trial.  We also consider whether the Court of Appeals erred when it declined to address the defendant's challenge to the sufficiency of the Commonwealth's evidence after reversing the defendant's conviction.

## I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

A.     Pretrial Background

City of Richmond police obtained warrants charging Jayvon Lartay Bass with the robberies of Videll Smith and Freddie Brown ("Brown"), and the attempted robbery of Irving Smith.[1]  These crimes arose out of a home invasion occurring on September 2, 2013.

The General District Court of the City of Richmond certified these charges to a grand jury.  The grand jury subsequently returned indictments charging Bass with the robberies of Irving Smith and Brown, and the attempted robbery of Videll Smith, thereby transposing the first names of the victims from the warrants.  The grand jury also returned three indictments charging Bass with using a firearm in the commission of these felonies.

---

[1] Hereinafter, this opinion will refer to Videll Smith as "Videll" and Irving Smith as "Irving," except where usage of their full names would provide additional context.

Thereafter, Bass was tried for these offenses by a jury. During the arraignment, the court informed Bass that he was charged with the robberies of Irving Smith and Brown, and the attempted robbery of Videll Smith, as well as with three counts of using a firearm in the commission of these felonies.

B.      Testimony at Trial

Videll testified that he was at his residence in Richmond on September 2, 2013. Videll's roommates, "Pops" and Irving, as well as two friends, Brown and William Ross ("Ross"), were also at the residence.[2] At some point, the circuit breaker tripped, interrupting the air conditioning, and Videll went outside to reset the breaker. Outside, he encountered Bass, whom he had met the previous day during a game of cards at the residence. Bass asked to speak with Pops, and Videll let Bass inside.

Videll then went back to his bedroom. Shortly after, he heard a "commotion" and came out into the common area. He immediately saw a masked man holding Brown at gunpoint while Bass moved throughout the rooms. The gunman directed Videll and Brown to stand together against a wall, and demanded their wallets. Brown handed over his wallet, and then Bass accompanied Videll to his bedroom to retrieve his wallet. Bass took Videll's wallet, which contained $85 and his identification cards, and left the residence. After Bass left, the gunman told Videll to go outside and look for Pops, who had escaped as the home invasion began, which provided an opportunity for Videll to call the police.

Brown testified he was at the residence "socializing" with Pops and William Ross. He observed Bass enter the house while talking on his cell phone and ask to speak with Pops. Shortly thereafter, a masked gunman entered the house and began demanding money. Brown

_____

[2] According to the testimony at trial, "Pops" is also known as Jerry Hines.

2

attempted to escape, but slipped, at which point Videll and Irving came out of their bedrooms. While the gunman was distracted by Brown, Pops and Ross managed to get out through the back door. The gunman ordered the three remaining men to sit at the table while Bass went through the rooms. Then, the gunman demanded money from the three men, and Brown gave the gunman approximately $45, while Bass went with Videll to get his wallet from his bedroom. The gunman sent Videll outside, then Bass left, and the gunman left soon after.

Irving Smith testified that he was awakened by the sound of chairs being turned over and the back door opening. He came out of his bedroom and saw Brown, a masked gunman, and Bass in the common area of the residence. The gunman directed him to empty his pockets, but he did not have anything. The gunman told him to sit down, then Bass left through the front door, and the gunman followed soon after.

Detective Derrick Longoria testified that he responded to the scene. After interviewing the witnesses, he compiled a photo lineup that he showed to Videll the following day. Videll identified Bass in the lineup as the individual who had taken his wallet. When Detective Longoria interviewed Bass, he denied ever being at the residence.

At the close of the Commonwealth's case, Bass moved to strike "all the charges" on the ground that "there has been no evidence presented that [Bass] had known who the masked person was . . . [or that he had acted] in concert with this masked man." Bass also identified a single discrepancy in the witnesses' testimony, noting that Irving had testified the gunman's face was completely covered while the other witnesses testified the gunman's face was only partially covered. The court denied the motion to strike.

C.      Verdict and Sentencing

Bass chose to not put on evidence in defense and the parties submitted jury instructions. After reviewing the proposed instructions, the court asked the parties to make certain clarifications to those regarding "the attempted robbery of Irving Smith." After the parties amended the instructions accordingly, the court instructed the jury regarding the alleged robberies of Videll Smith and Brown, and the alleged attempted robbery of Irving Smith. Thus, the jury instructions conformed to the warrants and the evidence presented at trial, but diverged from the indictments. Bass did not object.

The jury found Bass guilty of the robbery of Videll Smith, but could not reach a verdict regarding the other offenses. The court instructed the jury on sentencing for robbery, and the jury recommended a sentence of ten years. Bass did not object.

On August 11, 2014, the court entered a sentencing order, which stated that Bass had been found guilty of robbery and sentenced Bass to a term of ten years. Like the jury instructions, the conviction and sentence were consistent with the evidence presented at trial but diverged from the indictment.

D.      Appeal to the Court of Appeals

In the Court of Appeals, Bass argued that there was a fatal variance between the indictment and the verdict, though he conceded his trial counsel had failed to make a timely objection to the variance. Accordingly, he asked the Court of Appeals to apply the ends of justice exception in Rule 5A:18, contending that "being convicted of a more serious crime than alleged in the indictment would be a sufficient miscarriage of justice." He also argued that the Commonwealth's eyewitness testimony was "inherently incredible," and thus the trial court erred by allowing the jury to consider it.

4

Applying the ends of justice exception, the Court of Appeals reversed the conviction and remanded the case for a new trial on a charge no greater than attempted robbery. Bass v. Commonwealth, Record No. 1442-14-2, 2015 Va. App. LEXIS 209, at *8 (July 7, 2015). In doing so, the Court of Appeals relied on Legette v. Commonwealth, 33 Va. App. 221, 532 S.E.2d 353 (2000) and Ferguson v. Commonwealth, 51 Va. App. 427, 658 S.E.2d 692 (2008) (en banc), while distinguishing Henson v. Commonwealth, 208 Va. 120, 155 S.E.2d 346 (1967). Having reversed Bass' conviction, the Court of Appeals concluded that it was unnecessary to consider whether the evidence was otherwise sufficient to sustain the conviction.

We granted the Commonwealth this appeal.

## II. ANALYSIS

The Commonwealth argues the Court of Appeals erred by relying on Legette and Ferguson, because the sentence imposed by the circuit court did not exceed the statutory maximum for the crime of which Bass was convicted. The Commonwealth contends Henson should direct the analysis in this case, and also contends Bass failed to demonstrate that a miscarriage of justice occurred. The Commonwealth therefore concludes that the Court of Appeals erroneously applied the ends of justice exception to Rule 5A:18, and consequently any argument regarding the variance is procedurally barred. In addition, the Commonwealth assigns error to the Court of Appeals' failure to address Bass' argument that the eyewitness testimony was inherently incredible, as well as the remedy fashioned by the court.

A.    Application of the Ends of Justice Exception

"Rule 5A:18 contains the contemporaneous objection rule applicable to the Court of Appeals and parallels the requirements of the contemporaneous objection rule applicable to this Court as provided in Rule 5:25." Maxwell v. Commonwealth, 287 Va. 258, 264, 754 S.E.2d

516, 518 (2014). The rule requires litigants to make their objections "at a point in the proceeding when the trial court is in a position not only to consider the asserted error, but also to rectify the effect of the asserted error." Scialdone v. Commonwealth, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010) (internal quotation marks and citation omitted). The rule strives to ensure "the trial court has an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 188 (2010).

In limited circumstances, Rule 5A:18, like Rule 5:25, also "allows an appellate court to consider a matter not preserved by objection in the trial court 'to attain the ends of justice.'" Charles v. Commonwealth, 270 Va. 14, 17, 613 S.E.2d 432, 433 (2005); see Gheorghiu v. Commonwealth, 280 Va. 678, 689-90, 701 S.E.2d 407, 414 (2010) (noting narrow contours of the exception) (collecting cases).[3] This Court considers two questions when deciding whether to apply the ends of justice exception: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." Gheorghiu, 280 Va. at 689, 701 S.E.2d at 413 (citation omitted). On appeal, we are in the same position as the Court of Appeals to review the record. Therefore, whether the Court of Appeals properly applied the ends of justice exception is a question of law that this Court reviews de novo. See Maxwell, 287 Va. at 264, 754 S.E.2d at 518 ("The Court of Appeals' interpretation of the Rules of this Court, like its interpretation of a statute, presents a question of law that [the Court] reviews de novo.") (internal quotation marks and citation omitted); Charles,

---

[3] In relevant part, Rule 5A:18 provides: "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

6

270 Va. at 18-20, 613 S.E.2d at 433-35 (reviewing the Court of Appeals' refusal to apply the ends of justice exception).

Bass concedes he did not object at any point during the trial on the grounds that there was a variance between the indictments and the evidence presented by the Commonwealth. We also observe that Bass acquiesced to jury instructions conforming to the Commonwealth's evidence. Thus, Bass' argument is procedurally barred unless we can reach it through the ends of justice exception.[4]

1.    Trial Court Error:  Fatal Variance Between Indictment and Evidence

A fatal variance occurs when the criminal pleadings charge one offense and the evidence proves another.  See Gardner v. Commonwealth, 262 Va. 18, 24-25, 546 S.E.2d 686, 689-90 (2001) (indictment charged theft of money by false pretenses from one victim, while the evidence proved theft by false pretenses from another victim).  In the present case, one indictment alleged that Bass attempted to rob Videll Smith, and a second alleged that Bass robbed Irving Smith.  However, the evidence proved only that Bass completed the robbery of Videll Smith, and the jury convicted Bass accordingly.  Thus, a fatal variance existed between the indictments against Bass and the proof offered by the Commonwealth at trial.  A conviction for a crime other than the one charged in the indictment is plainly reversible.  See Gardner, 262 Va. at 25, 546 S.E.2d at 690 (vacating a defendant's conviction when the evidence proved theft by false pretenses from a victim other than the one named in the indictment); Hummer v. Commonwealth, 122 Va. 826, 829, 94 S.E. 157, 158 (1917) (concluding that the trial court

---

[4] It is well settled that the question of a variance between an indictment and the proof offered at trial is subject to the contemporaneous objection rule.  See, e.g., Booth v. Commonwealth, 165 Va. 794, 795-96, 183 S.E. 257, 257-58 (1936).

mistakenly found there could be a conviction for "malicious cutting" under an indictment for the lesser offense of "unlawful cutting").

2.    The Error Did Not Result in a Grave Injustice

The purpose of an indictment is to provide the accused with notice of the cause and nature of the accusations against him. See Henson, 208 Va. at 125, 155 S.E.2d at 349. The requirement that felony prosecutions proceed by indictment or presentment is statutory, not constitutional, and the accused may waive the right to be tried by such. See Code § 19.2-217. Accordingly, there is no error of constitutional magnitude at issue. Henson, 208 Va. at 125, 155 S.E.2d at 349.[5]

Moreover, Bass has not identified any defect in the proceedings that would render any aspect of the judgment void. Cunningham v. Hayes, 204 Va. 851, 855, 134 S.E.2d 271, 274 (1964). This point distinguishes the present case from those relied on by the Court of Appeals.

In Legette, the defendant was indicted for unlawful wounding. 33 Va. App. at 222, 532 S.E.2d at 354. Following the presentation of evidence, the trial court pronounced the defendant guilty of malicious wounding. However, the conviction order recited that the trial court had found the defendant "guilty as charged in the indictment." Id. at 223, 532 S.E.2d at 354. Subsequently, the trial court sentenced the defendant to six years in prison — consistent with a conviction for malicious wounding, but exceeding the maximum sentence for unlawful wounding as charged in the indictment. Id. at 223 & n.2, 532 S.E.2d at 354 & n.2. The

---

[5] The presence of a constitutional error is a relevant, though not necessarily dispositive, consideration when determining whether to apply the ends of justice exception. See Dearing v. Commonwealth, 260 Va. 671, 673, 536 S.E.2d 903, 904 (2000) (applying harmless error standard to determine whether violation of Confrontation Clause required reversal); cf. Hicks v. Dir., Dept. of Corr., 289 Va. 288, 301, 768 S.E.2d 415, 421 (2015) (declining to apply ends of justice exception to Brady argument waived under Rule 5:25 because the evidence was not material).

defendant never objected, and at the sentencing hearing the defendant's attorney acknowledged the defendant had been convicted of malicious wounding. Id. at 223, 532 S.E.2d at 354.

The Court of Appeals applied the ends of justice exception, reversed the sentence for malicious wounding, and remanded for sentencing consistent with a conviction for unlawful wounding. Id. at 228, 532 S.E.2d at 356. Observing that a court speaks through its orders, the Court of Appeals found the defendant had been convicted of unlawful wounding "as charged in the indictment" — not malicious wounding as pronounced in open court. Id. at 223, 225, 532 S.E.2d at 354, 355. Then, the court explained that "prejudice or manifest injustice results when a person is sentenced for a crime other than that for which he was convicted." Id. at 225, 532 S.E.2d at 355.

In Ferguson, the defendant was also indicted for unlawful wounding. 51 Va. App. at 433, 658 S.E.2d at 695. Further, as in Legette, the trial court pronounced the defendant guilty of malicious wounding following the presentation of evidence. Id. at 434, 658 S.E.2d at 695. But the conviction order stated that the trial court had found the defendant guilty as charged in the indictment. Subsequently, the trial court sentenced the defendant to twenty years' imprisonment with fifteen years suspended — a sentence in excess of the statutory maximum for unlawful wounding. Relying on Legette, the Court of Appeals affirmed the conviction for unlawful wounding, reversed the sentence, and remanded for sentencing consistent with a conviction for unlawful wounding. Id. at 434, 437, 658 S.E.2d at 695, 697.

In Legette and Ferguson, the sentences imposed by the trial courts were void to the extent they exceeded the term authorized by the General Assembly for the crimes of which the defendants were convicted. See Deagle v. Commonwealth, 214 Va. 304, 305, 199 S.E.2d 509, 510-11 (1973). We agree that a manifest injustice occurs when a defendant receives a sentence

9

beyond the power of a court to pronounce. See Charles, 270 Va. at 20, 613 S.E.2d at 435 ("Denying [the defendant] his liberty on the basis of a void sentence would impose a grave injustice upon him."). But in the present case, the circuit court acted within its authority when it convicted Bass, however erroneously, of robbery. See Hayes, 204 Va. at 856, 134 S.E2d at 275 ("'[W]hen the offense is one over which the court has jurisdiction and the court acquires jurisdiction of the person of the defendant, it has jurisdiction and power to determine the elements which constitute the offense and the sufficiency of the indictment, and such jurisdiction necessarily embraces the power to make an erroneous, as well as a correct decision.'") (quoting Barnes v. Hunter, 188 F.2d 86, 89, 90 (10th Cir. 1951) with approval).

This Court has previously held that no grave injustice occurs merely because a variance exists between an indictment and the evidence offered at trial — even where the defendant is convicted of a greater crime than the one charged in the indictment. See Henson, 208 Va. at 121, 155 S.E.2d at 346. In Henson, the defendant was indicted for attempted robbery. However, following the presentation of evidence, the court convicted the defendant of robbery. The defendant did not object at any point during the trial. Id. at 123, 155 S.E.2d at 348. Before sentencing, the trial court discovered that the indictment was inconsistent with the verdict. The court indicated that it would be willing to consider setting the verdict aside if the defendant renewed his motion to strike, assigning the variance as the grounds therefor. Id. The defendant declined to do so, hoping to persuade this Court to set aside the conviction and remand the case with direction to find him guilty of no greater offense than attempted robbery, rather than risk the possibility that the Commonwealth would obtain a new indictment charging him with the completed robbery. Id. at 126, 155 S.E.2d at 350.

It was on this latter point that the Court of Appeals distinguished <u>Henson</u> from the present case. However, this Court's rationale in <u>Henson</u> did not hinge on the defendant's affirmative decision to not object. Instead, the Court refused to apply the ends of justice exception because the defendant identified no prejudice stemming from the variance:

> No good cause has been shown why we should apply an exception to the requirement of [the contemporaneous objection rule] . . . . It is not necessary here that we consider the objection to attain the ends of justice. [The defendant] had a fair trial on the charge against him, which all concerned thought was a charge of robbery. The ends of justice would not be promoted by setting aside the verdict because of defect in the indictment.

<u>Id.</u>

Like the defendant in <u>Henson</u>, Bass has failed to identify any reason beyond the variance to support application of the ends of justice exception. The original warrant charged Bass with the completed robbery of Videll Smith; Bass was present throughout the trial as the Commonwealth produced evidence showing that he did complete the robbery of Videll Smith; and Bass had the opportunity to review the jury instructions, which conformed to the evidence presented. Certainly, Bass was aware that he was going to trial on two charges of robbery and one charge of attempted robbery, and he does not argue that his defense was predicated on the alleged identity of his victims. In short, Bass had notice of the charges against him, and he proceeded throughout trial apparently under the assumption that he was charged with the robbery of Videll Smith.[6]

---

[6] We observe that a well-established mechanism exists for remedying any confusion or surprise that might occur due to a variance between an indictment and the evidence presented. Code § 19.2-231 authorizes a trial court to permit the Commonwealth to amend an indictment to conform to the evidence adduced. If the Commonwealth chooses to do so, the court must re-arraign the accused on the amended indictment and allow the accused to plead anew. If the court finds the amendment comes as a surprise, the accused is entitled to a continuance to prepare his defense. <u>See</u> Code § 19.2-231. These procedures allow cases to be tried on their merits, while

11

Nothing in the record demonstrates that Bass could not properly be convicted for robbery based on the evidence adduced at trial, and his situation is not analogous to any of the "very limited circumstances" under which we have invoked the ends of justice exception. See Gheorghiu, 280 Va. at 689, 701 S.E.2d at 414 (collecting cases). Therefore, we conclude that the Court of Appeals erred when it applied the ends of justice exception under these circumstances.

B.    Bass' Challenge to the Sufficiency of the Commonwealth's Evidence

The Court of Appeals did not address Bass' argument regarding the sufficiency of the Commonwealth's evidence, apparently reasoning that Bass could not be retried upon a charge greater than attempted robbery once it had reversed his conviction for robbery due to the variance. This was incorrect.

"It is clear that the Constitution permits retrial after a conviction is reversed because of a defect in the charging instrument." Montana v. Hall, 481 U.S. 400, 404 (1987). Indeed, "[i]t is a venerable principle of double jeopardy jurisprudence that the successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge." Id. at 402 (internal quotation marks and citation omitted). As the Court of Appeals reversed Bass' conviction for robbery without addressing the sufficiency of the evidence to convict him of that offense, the Commonwealth could have properly obtained a new indictment for robbery and proceeded to trial on that charge notwithstanding the prior proceeding. See Code § 19.2-293 ("A person acquitted of an offense on the ground of a variance between the allegations and the proof of the indictment or other accusation, or upon an exception to the form or substance thereof, may be arraigned again on a

protecting the accused's right to demand notice of the charges against him. See Va. Const. art. I, § 8 ("[I]n criminal prosecutions a man hath a right to demand the cause and nature of his accusation.").

12

new indictment or other proper accusation, and tried and convicted for the same offense, notwithstanding such former acquittal."). Therefore, the Court of Appeals erred when it remanded the case for a retrial upon a charge no greater than attempted robbery without addressing the sufficiency of the evidence against Bass.

We turn next to Bass' sufficiency argument because, if successful, it would provide an alternative ground for affirming the Court of Appeals' judgment. In short, Bass contends the Commonwealth's evidence was insufficient to convict him of robbery because "the testimony of the Commonwealth's eye-witness[es] was inherently incredible and [the] jury should not have been allowed to consider it." However, Bass failed to present this argument to the circuit court during his motion to strike, and therefore it is barred by Rules 5A:18 and 5:25.

In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case if he elects to not introduce evidence of his own, or a in motion to strike at the conclusion of all the evidence or a motion to set aside the verdict if he does elect to introduce evidence of his own. See Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 84, 688 S.E.2d 199, 210 (2010). In his motion to strike at the conclusion of the Commonwealth's case, Bass argued that there was no evidence he knew the gunman or acted in concert with the gunman. This argument apparently challenged the Commonwealth's evidence regarding the firearm charges and the charges involving Brown and Irving, as there was no evidence Bass personally carried a gun, or personally took or attempted to take anything from those individuals. But this argument did not raise the question of whether the Commonwealth's eyewitness testimony was inherently incredible as a matter of law. Regarding this separate issue, Bass identified only a single discrepancy in the witnesses' testimony. He did not contend the testimony was unworthy of belief or that the jury should not be permitted to

13

weigh the witnesses' credibility.  See Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985) ("[T]he credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses."); Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968) ("For evidence to be incredible it must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.") (internal quotation marks and citations omitted).  Bass thus failed to make the circuit court aware of his legal position, and consequently he failed to preserve this argument for appeal.  See Brown, 279 Va. at 217, 688 S.E.2d at 189.

### III.  CONCLUSION

For these reasons, we conclude that the Court of Appeals misinterpreted Henson and its own precedent, and consequently misapplied the ends of justice exception in Rule 5A:18.  We also conclude that the Court of Appeals erred when it declined to address Bass' challenge to the sufficiency of the Commonwealth's evidence.  However, we find that Bass failed to preserve this argument for appeal, and we therefore do not consider the argument on its merits.  We therefore reverse the judgment of the Court of Appeals and enter final judgment in accordance with the jury verdict and sentencing order.

Reversed and final judgment.

14