COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Decker and Russell
Argued at Richmond, Virginia

UNPUBLISHED

MICHELLE H. TOMLIN

v.      Record No. 1946-15-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
MARCH 14, 2017

FROM THE CIRCUIT COURT OF SUSSEX COUNTY
Nathan C. Lee, Judge

Connie Louise Edwards for appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General; Donald E. Jeffrey, III, Senior Assistant Attorney
General, on brief), for appellee.


Following a bench trial on August 21, 2015, the trial court convicted Michelle H. Tomlin

("appellant") of four counts of obtaining money under false pretenses in violation of

Code § 18.2-178, four counts of embezzlement in violation of Code § 18.2-111, and one count of

grand larceny in violation of Code § 18.2-95.  On appeal, appellant argues that the trial court

erred (1) by allowing the Commonwealth to amend four indictments on the morning of the trial,

(2) by failing to grant the motions to strike as to each and every indictment, (3) by denying

appellant's "Motion to Elect Charge" and "Motion for Bill of Particulars," and (4) by convicting

appellant of four counts of obtaining money by false pretenses when the indictments "failed to

properly allege and/or the Commonwealth failed to prove the statutory threshold of $200 in order

to proceed under a felony theory."  For the following reasons, we affirm the trial court.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth, as we must since it was the prevailing party" in the trial court. Beasley v. Commonwealth, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)).

On September 9, 2014, appellant was indicted on four counts of felony obtaining signatures by false pretenses in violation of Code § 18.2-178. On March 20, 2015, appellant was indicted on four counts of felony embezzlement in violation of Code § 18.2-111 and on one count of grand larceny in violation of Code § 18.2-95. Appellant filed two pretrial motions on April 22, 2015: a "Motion to Elect Charge" and a "Motion for Bill of Particulars." On April 27, 2015, the trial court conducted a hearing by teleconference call and denied each motion. On August 21, 2015, the morning of the trial, the Commonwealth moved to amend the four obtaining signatures by false pretenses charges to obtaining money by false pretenses – which kept both charges as being in violation of Code § 18.2-178. The trial court granted the Commonwealth's motion over appellant's objection. After a bench trial, the trial court convicted appellant of four counts of false pretenses and one count of grand larceny. The trial court withheld a finding of guilt on the four counts of embezzlement and requested additional briefing from the parties. On November 20, 2015, the trial court found appellant guilty of four counts of embezzlement. By order entered November 30, 2015, the trial court sentenced appellant to 45 years in prison, with all but 18 months suspended.

Appellant worked as a social worker at Waverly Healthcare Center ("WHC"), which is a long-term care facility for both elderly and disabled patients. Appellant's responsibilities included shopping for the patients, using money from the Waverly Healthcare patient fund account ("the patient fund"). The patient fund is one bank account that contains all the money deposited by all WHC patients. WHC keeps an accounting of "all money that goes in and out [of the patient fund]

- 2 -

for each patient." The patient fund operates by agreement between WHC and each patient. Patients would generally tell appellant what items they wanted purchased. Appellant would then go to WHC's business office to obtain an advance from the patient fund to purchase the requested items. Appellant was not required to present paperwork in support of a request for an advance. Appellant would then purchase the items, bring back receipts to the business office, and deliver the items to the patients. If appellant spent more money than she was given as an advance, the business office would issue to appellant an additional check from the patient fund to cover her expenses.

The Commonwealth focused its case on a series of five transactions that occurred during the timeframe of July 2011 to June 2012. In one transaction, appellant paid for the items using her own money and was later reimbursed for her expenses by WHC's issuance of two checks from the patient fund. In the other four transactions, appellant received an advance check from the patient fund based on her estimate of the amount of money she would require for each patient on her shopping trip. After each shopping trip, appellant submitted an itemized shopping list to her employer. Those shopping lists contained assertions that appellant had delivered the items in question to each patient. The shopping lists were accompanied by photocopies of the receipts of sale for certain expensive items. In four of the transactions, appellant then used the original receipts to return certain items valued at over $200 for a full refund to her. Appellant never returned the proceeds from these refunds to the patient fund.[1] In the remaining transaction, appellant used the proceeds from a patient fund advance check to purchase nineteen t-shirts of four varying sizes supposedly for a particular patient. In this case, appellant did not return this merchandise for a refund, but she simply never delivered the t-shirts to the patient. When appellant's actions came to light after an audit was conducted, WHC terminated appellant on July 31, 2012.

---

[1] The patient shopping lists also contained legitimate purchases that were both requested by and delivered to various patients. Those transactions will not be discussed in this opinion.

II. ANALYSIS

A. AMENDMENT OF THE FALSE PRETENSES INDICTMENTS

In her first assignment of error, appellant argues that the trial court erred by allowing the Commonwealth to amend the four indictments from obtaining *signatures* by false pretenses to obtaining *money* by false pretenses, claiming the amendments impermissibly changed the nature and character of the offenses charged. Code § 19.2-231 governs the amendment of indictments. That statute provides, in pertinent part:

> If there be any defect in form in any indictment, presentment or information, or if there shall appear to be any variance between the allegations therein and the evidence offered in proof thereof, the court may permit amendment of such indictment, presentment or information, at any time before the jury returns a verdict or the court finds the accused guilty or not guilty, *provided the amendment does not change the nature or character of the offense charged*.

Code § 19.2-231 (emphasis added). "Code § 19.2-231 'is remedial in nature and is to be liberally construed in order to achieve the laudable purpose of avoiding further unnecessary delay in the criminal justice process by allowing amendment, rather than requiring reindictment by a grand jury.'" Charles v. Commonwealth, 63 Va. App. 289, 295, 756 S.E.2d 917, 920 (2014) (quoting Powell v. Commonwealth, 261 Va. 512, 533, 552 S.E.2d 344, 356 (2001)).

"In determining whether [an] amended charge changes the nature or character of the offense charged, we examine the conduct or overt acts proscribed in each statute." Pulliam v. Commonwealth, 55 Va. App. 710, 715, 688 S.E.2d 910, 913 (2010). "However, in analyzing whether an amendment to an indictment is compliant with Code § 19.2-231, the Court does not 'compare the elements of the offense, but the underlying conduct of the defendant.'" Charles, 63 Va. App. at 297, 756 S.E.2d at 921 (quoting Pulliam, 55 Va. App. at 717, 688 S.E.2d at 914). "'[W]here there is similarity of purpose and subject matter of the Code sections involved, an amendment to an indictment [that merely] changes the Code provision under which a defendant

is charged . . . does not change the nature or character of the offense charged and is permissible under the provisions of [Code] § 19.2-231.'" Id. at 295-96, 756 S.E.2d at 920 (alterations in original) (quoting Dunaway v. Commonwealth, 52 Va. App. 281, 297, 663 S.E.2d 117, 125 (2008)).

When we review the appellant's conduct and overt acts and the purpose and subject matter of the two allegations at issue in this case, we conclude that the amendment of the indictment did not change the nature and character of the offense charged. Here, the original indictments charged appellant with obtaining signatures by false pretenses in violation of Code § 18.2-178 while the amended indictments charged appellant with obtaining money by false pretenses – in violation of the very same code section. The amended indictments did not alter the approximate timeframe of appellant's alleged misconduct. Under either theory of prosecution, the overt acts alleged were appellant's repeated false representations to WHC regarding her patient shopping activities. In other words, both the original and the amended indictments focused on the same transactions between appellant and her employer WHC regarding the patient fund. The alleged goal of appellant's actions remained the same: to obtain either the signatures on the patient fund checks (a means to an end in appellant's alleged scheme) or the money from the checks (the end itself). Thus, the conduct alleged in both the original and the amended indictments was the same.

Furthermore, our examination of whether the amendments to the indictments changed the nature or character of the offenses charged requires this Court to determine whether the original charges and the amended charges share a "similarity of purpose and subject matter." Charles, 63 Va. App. at 295-96, 756 S.E.2d at 920. Here, both the original and the amended indictments concerned charges pursuant to the exact same code section – Code § 18.2-178. In addition, the crimes of obtaining signatures by false pretenses and obtaining money by false pretenses are both

premised on fraudulent representations made by the accused. While the punishments differ,[2] both offenses are designed to punish individuals who seek to profit or gain some advantage by committing fraud. For all of these reasons, we find that the amendments did not change the nature or character of the offenses charged. Consequently, the trial court did not err when it granted the Commonwealth's motion to amend the indictments from obtaining signatures by false pretenses to obtaining money by false pretenses.

### B. SUFFICIENCY OF THE EVIDENCE

In her second assignment of error, appellant challenges the sufficiency of the evidence in support of each of her convictions. When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Any issues of statutory interpretation are reviewed *de novo*.

---

[2] Obtaining signatures by false pretenses is punishable as a Class 4 felony pursuant to Code § 18.2-178. Obtaining money or property by false pretenses is punishable as larceny, which may be either a misdemeanor or a felony depending on the value of the property.

*1. The Evidence before the Trial Court*

<u>Transaction Involving Mary Kierson</u>

Based on appellant's conduct related to patient shopping for Mary Kierson, the trial court convicted appellant of one count of embezzlement and one count of obtaining money by false pretenses. In July 2011, appellant received two advance checks from WHC totaling $900: a $500 check dated July 14, 2011 (check #14243) and a $400 check dated July 21, 2011 (check #14258). On July 22, 2011, appellant submitted a patient shopping list detailing $910.23 worth of purchases for WHC patients. That shopping list included a $312.90 purchase for Mary Kierson. Appellant received a reimbursement check from WHC for $10.23 (check #14263) to cover the remaining $10.23 not covered by the total of $900 in advance checks.

The July 22, 2011 patient shopping list included one item for Mary Kierson – a television purchased for $312.90. The evidence established that appellant purchased a television for $312.90 using cash at Walmart on July 21, 2011 at approximately 5:52 p.m. Appellant submitted a photocopy of that receipt (not the original receipt) with the patient shopping list on July 22, 2011. John Worsham, a field investigator for Walmart, produced the original receipt for the purchase of a television on July 21, 2011 from Walmart. That receipt matched the photocopied receipt appellant gave to WHC. Worsham also produced a return receipt for the exact same television. He testified that the television was returned for cash the very next morning after the purchase on July 22, 2011 at around 7:26 a.m. Kierson's patient fund account was debited $312.90 for the television. Despite the fact that the television had been returned to Walmart, Kierson's account was not reimbursed for the value of the television.

<u>Transaction Involving Robert Jones</u>

Based on appellant's conduct related to patient shopping for Robert Jones, the trial court convicted appellant of one count of embezzlement and one count of grand larceny. On August

17, 2011, appellant received a $500 advance check (check #14329) for patient shopping. On August 19, 2011, appellant submitted a patient shopping list detailing $865.94 worth of purchases for WHC patients. That shopping list detailed four separate purchases for Robert Jones. One such purchase was supported by a $279.30 sales receipt for nineteen t-shirts from Embroidery Etc. On August 19, 2011, appellant received a reimbursement check from WHC for $365.94 (check #14335).

At trial, Jennifer Groves, the owner of Embroidery Etc., produced an original receipt for the purchase of nineteen camouflage t-shirts. The store-generated receipt matched the receipt that appellant had given to WHC. Groves testified that appellant's order included seven medium camouflage t-shirts, eight large camouflage t-shirts, three extra-large camouflage t-shirts, and one double extra-large camouflage t-shirt. The order was filed under appellant's name and address. Appellant paid for the shirts with a personal check, which cleared appellant's bank account on August 31, 2011. WHC conducted a search of Jones's room, but none of the camouflage t-shirts was ever located. On August 19, 2011, Jones's patient fund account was debited the value of the shirts – $279.30. That amount was not credited back to Jones's account.

### Transaction Involving Dorothy Williams

Based on appellant's conduct related to patient shopping for Dorothy Williams, the trial court convicted appellant of one count of embezzlement and one count of obtaining money by false pretenses. On March 23, 2012, appellant received a $1,620 advance check (check #14801) from WHC. On March 30, 2012, appellant submitted a patient shopping list detailing $1,643.45 worth of purchases for Dorothy Williams. The patient shopping list included a photocopy of a receipt dated March 30, 2012 for the purchase of a keyboard (digital piano) valued at $838.95. That same day, appellant received a reimbursement check from WHC for $23.45 (check #14819) to cover her additional expenses from the March 30, 2012 patient shopping list.

Scott Bailey, the owner of the piano store, sold a keyboard on March 30, 2012. The bill of sale was made out to Dorothy Williams. Bailey testified that the keyboard was purchased for $838.95 by two women (one of whom was in a wheelchair) using a debit card in appellant's name. Bailey stated that the woman pushing the woman in the wheelchair had asked if she could bring the keyboard back the following day if it was not what they wanted. Pursuant to store policy, all sales were final and non-refundable. However, Bailey testified that he made an exception in this instance by allowing the keyboard to be returned by the next day, March 31, 2012. The record reflects that Bailey struck the words "NON-REFUNDABLE" from the bill of sale. On March 31, 2012, the keyboard was returned and a full refund was debited back to appellant's debit card as appellant's card had been used to make the original purpose. Amy Simms, a custodian of records at Bronco Federal Credit Union ("BFCU"), testified that $838.95 was credited from Piano and Organ Showcase back to appellant's account at BFCU on April 3, 2012.

Howard Moore, a Department of Forensic Sciences analyst, testified at trial as an expert in the field of forensic document examination. Prior to the trial, Moore analyzed two signatures from the keyboard transaction: one from the original sales order invoice and the other from the debit card receipt from the transaction. Moore then compared those signatures with known signatures of appellant. A certificate of analysis containing Moore's findings was entered into evidence. In the certificate of analysis, Moore concluded that there was "a high degree of likelihood" that appellant signed the two documents from the keyboard transaction. In his testimony at trial, Moore ultimately concluded that it was "very likely that [appellant] wrote those two questioned signatures" from the keyboard transaction.

## Transaction Involving Percell Smith

Based on appellant's conduct related to patient shopping for Percell Smith, the trial court convicted appellant of one count of obtaining money by false pretenses. On May 14, 2012, appellant submitted a patient shopping list detailing $588.10 worth of purchases for WHC patients. That shopping list included one item for Percell Smith – a television valued at $302.40. Appellant had purchased that television with her debit card at Walmart on May 13, 2012. Appellant submitted a photocopy of that receipt (not the original receipt) with the patient shopping list on May 14, 2012. WHC reimbursed appellant for the May 14, 2012 shopping list with two checks: one dated May 11, 2012 for $250 (check #14904) and another dated May 14, 2012 for $338.10 (check #14905).

At trial, John Worsham of Walmart produced the original receipt for the television purchase. That receipt matched the photocopied receipt appellant gave to WHC on May 14, 2012. Worsham also produced a return receipt dated May 15, 2012 for the exact same television. The television had been returned using the same debit card that made the original purchase on May 13, 2012.[3] Amy Simms of BFCU testified that appellant's account showed a deposit from Walmart into her account for $302.40 on May 16, 2012. Smith's patient fund account was debited $302.40 for the television. Despite the fact that the television had been returned to Walmart, Smith's account was not reimbursed for the value of the television.

## Transaction Involving Wilbert Greene

Based on appellant's conduct related to patient shopping for Wilbert Greene, the trial court convicted appellant of one count of embezzlement and one count of obtaining money by

---

[3] The last four digits of the debit card used to purchase and return this television were *4154. Amy Simms of BFCU testified that the last four digits of appellant's debit card are also *4154.

false pretenses. On June 15, 2012, appellant received a $500 advance check (check #14984) from WHC. On June 27, 2012, appellant submitted a patient shopping list detailing $550.62 worth of purchases for WHC patients. That shopping list included one item for Wilbert Greene valued at $417.90. Earlier that morning at approximately 7:12 a.m., appellant had purchased a television from Walmart for $417.90 using a personal check. Appellant submitted a photocopy of the receipt for the television (not the original receipt) with the patient shopping list when she arrived at work. Appellant then received an additional reimbursement check from WHC for $50.62 (check #14997).

At trial, John Worsham of Walmart produced the original receipt for the television purchase. That receipt matched the photocopied receipt appellant gave to WHC on June 27, 2012. The receipt contained appellant's driver's license number. Worsham also produced a return receipt for the exact same television. The return receipt indicated that the television had been returned for cash at approximately 11:09 a.m. – *less than four hours* after the original purchase. Amy Simms of BFCU testified that appellant deposited $360 in cash into her BFCU account at approximately 11:27 a.m. that same day. Greene's patient fund account was also debited $417.90 for the television. Despite the fact that the television had been returned to Walmart, Greene's account was not reimbursed for the value of the television.

### 2. *Obtaining Money by False Pretenses*

Appellant challenges her four convictions for obtaining money under false pretenses. Code § 18.2-178 states, in pertinent part, "If any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny . . . ." When seeking a conviction of obtaining money by false pretenses,

> the Commonwealth must prove: "(1) an intent to defraud; (2) an
> actual fraud; (3) use of false pretenses for the purpose of

- 11 -

perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property."

Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977) (quoting Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976)). A criminal false pretense has been defined as follows:

[T]he false representation of a past or existing fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and does in fact deceive, and by means of which one person obtains value from another without compensation. According to the definition, the false pretense must be a representation as to an existing fact or past event.

Parker v. Commonwealth, 275 Va. 150, 154, 654 S.E.2d 580, 582 (2008) (quoting Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959)). Appellant argues that the evidence failed to establish that she possessed an intent to defraud or that she made false representations. We disagree.

At trial, the evidence was sufficient for a rational factfinder to conclude that appellant acted with an intent to defraud. In each transaction, appellant submitted *photocopies* of her receipts when she turned in her patient shopping lists because she needed the original receipts to return the items in question for a refund. In the transaction involving the keyboard, appellant sought and obtained special permission to be excused from the store's no return policy *prior to* completing the purchase. Appellant then quickly returned each of the four items within two days of the original purchase (including one transaction where the return was completed less than four hours after the original purchase). After each return, the evidence established that appellant retained the store refunds herself, creating a clear pattern of fraudulent conduct over a period of nearly twelve months that made it increasingly clear to the factfinder that she had an intent to defraud in each instance. See Mughrabi v. Commonwealth, 38 Va. App. 538, 546, 567 S.E.2d

- 12 -

542, 546 (2002) ("evidence that appellant perpetrated more than one fraud about the same time is relevant to show his fraudulent intent"). From this evidence, a rational factfinder could certainly conclude that appellant acted with an intent to defraud.

This Court also finds that the evidence was sufficient for a rational factfinder to conclude that appellant made false representations to her employer to accomplish her fraudulent scheme. Related to this issue, the trial court made the following findings of fact:

> But her plan all along, when she handed that receipt, not an original receipt, and that's for a reason, because the original receipt was needed at Walmart to get her money back – she made a copy, and she gave it to the nursing home. It's all a plan to get that money and then return the item and get the money again.

Based on that evidence, the trial court found that appellant's use of photocopied receipts was a false representation to her employer that those transactions were final, when appellant had, in fact, kept the original receipts to obtain and keep the proceeds from the returns. In addition, the Court notes that there was substantial evidence in the record of appellant's repeated fraudulent conduct throughout these transactions. Based upon that pattern of fraudulent conduct, the trial court could have reasonably concluded that appellant's estimates as to how much money she would need in advance for patient shopping were false representations designed to induce WHC to provide a larger advance check. For all of these reasons, we find the evidence was sufficient for a rational factfinder to conclude that appellant made false representations in furtherance of her scheme to defraud. Consequently, we affirm appellant's four convictions for obtaining money by false pretenses.

### 3. Embezzlement

Next, appellant challenges her convictions for embezzlement. Code § 18.2-111 states, in pertinent part, "[i]f any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money . . . or any other personal property, tangible or intangible, which he shall have

- 13 -

received . . . by virtue of his office, trust, or employment . . . he shall be guilty of embezzlement." Appellant argues that the evidence failed to prove that she wrongfully appropriated any property entrusted to her by virtue of her employment. Appellant also asserts that the evidence failed to prove that she was in a position of authority over the WHC patient fund. We disagree.

At trial, the evidence established that appellant had regular access to the WHC patient fund by virtue of her employment at the facility. One of appellant's job responsibilities included patient shopping, where appellant regularly was granted access to money from the patient fund account by virtue of her employment – and the very nature of her job of shopping for the patients. On four separate occasions, appellant asked for and received advance payments from the patient fund to shop for the patients of WHC. While appellant was not the custodian of the patient fund account, the plain language of the statute only requires a defendant to receive such funds "by virtue of [her] office, trust, or employment." Code § 18.2-111. In short, appellant used her position at WHC to obtain advance payments as part of her ongoing scheme to defraud. She then used those funds to purchase expensive items, return them, and then retain the refunds for herself. For these reasons, we find that the evidence clearly established that appellant received those funds by virtue of her employment, as required by Code § 18.2-111.

Appellant also asserts that the evidence failed to prove that she was in a position of authority over the WHC patient fund because the patient funds belonged to the patients – not to her employer. However, Code § 18.2-111 does not require the Commonwealth to prove that the embezzled money was the property of the embezzler's employer. Instead, the plain language of the statute prohibits the taking or use of "any money" so long as it wrongfully came into appellant's possession *by virtue of her employment*. Thus, we must reject appellant's interpretation of Code § 18.2-111 because proof of ownership of the embezzled money is not an

- 14 -

element of the offense. In summary, the evidence established that appellant wrongfully took and used monies from the patient fund, to which she had access by virtue of her employment, as part of her ongoing scheme to defraud. Consequently, we affirm appellant's four convictions for embezzlement.

### 4. Grand Larceny

Finally, appellant challenges her conviction for grand larceny by arguing that the Commonwealth put forth no evidence to establish that appellant took any money or other thing of value from the possession of WHC patient Robert Jones. "Larceny is the taking and carrying away of the goods and chattels of another with intent to deprive the owner of the possession thereof permanently." Lund v. Commonwealth, 217 Va. 688, 691, 232 S.E.2d 745, 748 (1977). Pursuant to Code § 18.2-95, any person who "commits simple larceny not from the person of another of goods and chattels of the value of $200 or more" is guilty of grand larceny. "In addition, proof of larceny requires that there be an asportation, or a movement of the seized goods, however slight, coupled with an intent to permanently deprive the owner of those goods." Britt v. Commonwealth, 276 Va. 569, 575, 667 S.E.2d 763, 766 (2008). We find that there was sufficient evidence for a rational factfinder to conclude that appellant's receipt of numerous camouflage t-shirts of various sizes purchased with Jones's money and her failure to deliver them to him constituted a taking that was accomplished with an intent to permanently deprive Jones of the t-shirts.[4]

At trial, the evidence established that appellant received an advance check for $500 for patient shopping on August 17, 2011. That same day, appellant made an order at Embroidery Etc. for $279.30. Two days later, appellant submitted to WHC a patient shopping list with a

---

[4] While the indictment for grand larceny alleged that appellant took "cash valued at $200.00 or more belonging to Robert Jones," the evidence at trial established the appellant took t-shirts from Jones. This variance between the indictment and the evidence was never raised in the trial court.

receipt for $279.30 from Embroidery Etc. That exact amount of money was debited from Jones's account after appellant turned in the patient shopping list. While there was no direct evidence at trial that appellant picked up the t-shirts, appellant's employment at WHC and her role as a patient shopper required her to do so. In addition, the check from appellant to Embroidery Etc. cleared appellant's bank account on August 31, 2011 – a circumstance from which a rational factfinder could well infer that appellant came into possession of the shirts on or around that date. WHC conducted a search of Jones's room but the camouflage t-shirts were never found. The trial court could certainly find from the totality of this evidence that appellant acquired the t-shirts and then failed to deliver them in violation of her duties as a patient shopper. That "movement of the seized goods, however slight" is sufficient to prove the asportation element of grand larceny. Britt, 276 Va. at 575, 667 S.E.2d at 766; see also Bryant v. Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994); Pritchard v. Commonwealth, 225 Va. 559, 562, 303 S.E.2d 911, 913 (1983). Therefore, we cannot say that the trial court erred when it found that the asportation element of grand larceny had been proven beyond a reasonable doubt.

In addition, there was ample evidence that appellant's taking of the camouflage t-shirts was accomplished with an intent to deprive Jones of his lawfully purchased property. Even though appellant used Jones's money from the advance check to make the order at Embroidery Etc., appellant's order was made using her own name and address. The order itself, consisting of nineteen camouflage t-shirts in four different sizes, was also such that a rational factfinder could certainly find it inconsistent with the expected needs of an elderly or disabled patient at WHC. The trial court heard evidence that neither Jones nor WHC had ever done business with Embroidery Etc., whereas appellant was a returning customer. Based on this evidence, the trial court certainly could find that appellant acquired the camouflage t-shirts for herself with the intent

to permanently deprive Jones of those items. Therefore, we cannot say that no rational trier of fact could have found that appellant was guilty of grand larceny, and we affirm that conviction.

C. DENIAL OF APPELLANT'S MOTION TO ELECT AND MOTION FOR A BILL OF PARTICULARS[5]

*1. Motion to Elect Charge*

In the trial court, appellant argued that the indictments for false pretenses and embezzlement were duplicitous, thereby requiring the Commonwealth to elect under which theory it would proceed at trial – either only on false pretenses or only on embezzlement. Likewise, appellant asserts on appeal that her convictions for both false pretenses and embezzlement based on the same act violated her constitutional protections against double jeopardy. We disagree.

"The constitutional prohibition of double jeopardy consists of three separate guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." Dingus v. Commonwealth, 23 Va. App. 382, 386, 477 S.E.2d 303, 305 (1996). Appellant argues that the trial court unlawfully punished her twice for the same conduct.

> In the prosecution for two crimes in the same trial, the double jeopardy defense does not apply unless (a) the defendant is twice punished for one criminal act, *and* (b) the two punishments are either for the same crime or one punishment is for a crime which is a lesser included offense of the other.

Coleman v. Commonwealth, 261 Va. 196, 200, 539 S.E.2d 732, 734 (2001) (emphasis in original) (citation omitted). "When 'the same act or transaction constitutes a violation of two

---

[5] The Commonwealth contends that appellant's failure to include a transcript of the April 27, 2015 telephonic conference in the record constitutes a waiver of the arguments made in this assignment of error pursuant to Rule 5A:8(b)(4)(ii). However, upon reviewing the record, we conclude that the appellate record is sufficient to address the issues raised by appellant's third assignment of error.

distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each [offense charged] requires proof of an additional fact which the other does not.'" Id. (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). "[I]n applying [the Blockburger] test, the two offenses are to be examined in the abstract, rather than with reference to the facts of the particular case under review." Blythe v. Commonwealth, 222 Va. 722, 726, 284 S.E.2d 796, 798 (1981).

Appellant's double jeopardy argument is without merit. By statute, embezzlement and obtaining money or property by false pretenses are separately named, distinct criminal offenses. See Code § 18.2-111 (embezzlement) and Code § 18.2-178 (false pretenses). Looking at the elements of the two crimes in the abstract, we find that each offense requires proof of an element that the other does not. Unlike embezzlement, a conviction for obtaining money by false pretenses requires proof of the "use of false pretenses for the purpose of perpetrating the fraud." Riegert, 218 Va. at 518, 237 S.E.2d at 807. On the other hand, embezzlement requires proof of a wrongful and fraudulent use of money received by the defendant "by virtue of his office, trust, or employment," see Code § 18.2-111, while false pretenses does not. Consequently, we conclude that appellant's convictions for obtaining money by false pretenses and embezzlement satisfy the Blockburger test because each offense requires proof of an additional fact which the other does not.[6] Therefore, we find that appellant's double jeopardy argument is without merit and affirm the trial court's denial of appellant's motion to elect charge.

---

[6] While it is well established that a party cannot concede the law, the Court notes that appellant appeared to agree, both in the trial court and on appeal, that obtaining money by false pretenses and embezzlement are "separate offenses which require different elements to be proven . . . ." Appellant's Brief at 29.

## 2. *Motion for Bill of Particulars*

Appellant also argues that the indictments lacked specific details to inform her of the nature and character of the charges against her. Code § 19.2-220 provides, in pertinent part, that an indictment "shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused committed the offense, and (4) reciting that the accused committed the offense on or about a certain date." "An indictment, to be sufficient, must give an accused notice of the nature and character of the charged offense so the accused can make his defense." Commonwealth v. Dalton, 259 Va. 249, 253, 524 S.E.2d 860, 862 (2000) (citing Satcher v. Commonwealth, 244 Va. 220, 231, 421 S.E.2d 821, 828 (1992)). "Whether a motion for a bill of particulars should be granted is a matter committed to the exercise of the sound discretion of the trial court." Harris v. Commonwealth, 8 Va. App. 424, 428, 382 S.E.2d 292, 294 (1989) (citing Ward v. Commonwealth, 205 Va. 564, 569, 138 S.E.2d 293, 297 (1964)).

From this record, we find that the trial court did not abuse its discretion when it found that the indictments sufficiently informed appellant of the nature and character of the charges against her. Each of the indictments for false pretenses and embezzlement[7] in this matter named appellant as the accused, identified the County of Sussex as the location of each offense, and recited that the offenses were committed on or about a certain date. The false pretenses indictments further alleged that appellant "unlawfully and feloniously obtain[ed], by any false pretense or token, money from the Waverly Health Care Patient Fund with intent to defraud any other person." The embezzlement indictments alleged that appellant "unlawfully, feloniously, wrongfully and fraudulently embezzle[d] money of a value of $200 or more [from the] Waverly

---

[7] Appellant's motion for a bill of particulars in the trial court did not challenge the indictment for grand larceny.

Health Care Patient Fund, which she received by virtue of her office, trust or employment." We agree with the trial court that these allegations were sufficient to give appellant notice of the nature and character of each charge. Consequently, we cannot say that the trial court erred in denying appellant's motion for a bill of particulars.

## D. CLAIM OF FATAL VARIANCES
### BETWEEN THE EVIDENCE AND THE FALSE PRETENSES INDICTMENTS

In her final assignment of error, appellant argues that the obtaining money by false pretenses indictments failed to assert – and the evidence failed to prove – the statutory threshold of $200 required for these charges to result in felony convictions (as opposed to misdemeanor convictions). Appellant concedes that she did not object at any point during the trial on the grounds that there was a fatal variance between the indictments and the evidence presented by the Commonwealth – and that she did not object that the Commonwealth failed to prove that she obtained more than $200 under false pretenses. Appellant asks this Court to reach those arguments through the ends of justice exception to Rule 5A:18.

The Supreme Court has described the ends of justice exception in the following terms:

> In limited circumstances, Rule 5A:18, like Rule 5:25, also "allows
> an appellate court to consider a matter not preserved by objection
> in the trial court 'to attain the ends of justice.'" This Court
> considers two questions when deciding whether to apply the ends
> of justice exception: "(1) whether there is error as contended by
> the appellant; and (2) whether the failure to apply the ends of
> justice provision would result in a grave injustice."

Commonwealth v. Bass, 292 Va. 19, 27, 786 S.E.2d 165, 170 (2016) (first quoting Charles v. Commonwealth, 270 Va. 14, 17, 613 S.E.2d 432, 433 (2005), then quoting Gheorghiu v. Commonwealth, 280 Va. 678, 689, 701 S.E.2d 407, 413 (2010)). In Bass, a grand jury returned indictments charging Bass with an attempted robbery of Videll Smith and with completed robberies of Irving Smith and Freddie Brown. Id. at 23, 786 S.E.2d at 167. However, at the conclusion of the trial, the jury convicted appellant of a completed robbery of Videll Smith. Id.

at 25, 786 S.E.2d at 168.  In <u>Bass</u>, the Supreme Court held that "no grave injustice occurs merely because a variance exists between an indictment and the evidence offered at trial – even where the defendant is convicted of a greater crime than the one charged in the indictment."  <u>Id.</u> at 30, 786 S.E.2d at 171.

Much like in <u>Bass</u>, appellant's assertion that she was convicted for a greater crime than the one charged in the indictment is also insufficient to demonstrate that the application of the ends of justice exception to Rule 5A:18 is necessary to avoid a grave injustice.  In the present matter, appellant has failed to identify any reason for this Court to apply the ends of justice exception to Rule 5A:18 beyond the fact that the false pretenses indictments failed to allege a value of $200 or more.  While the indictments in question do not contain any allegations regarding the amount of money obtained by false pretenses, the Court notes that each indictment is labeled with the header "A FELONY."  In addition, each false pretenses indictment alleges that appellant acted "unlawfully and feloniously."

Furthermore, nothing in the record demonstrates that appellant could not properly be convicted of four counts of felony obtaining money by false pretenses based on the evidence adduced at trial.  In *each* instance, the evidence established that appellant obtained monetary sums by false pretenses *in excess of $200*.  In three instances, appellant used false pretenses to keep the proceeds from the return of three televisions to Walmart valued at $312.90, $302.40, and $417.90 respectively.  In the fourth instance, appellant used false pretenses to keep the proceeds from a refund of $838.95 for the return of a keyboard.  In short, appellant has failed to demonstrate that the application of the ends of justice exception is necessary to avoid a grave injustice.  Consequently, we affirm the trial court's convictions for obtaining money by false pretenses.

### III. CONCLUSION

In summary, this Court finds that the trial court did not err when it granted the Commonwealth's motion to amend four indictments from obtaining signatures by false pretenses to obtaining money by false pretenses because those amendments did not actually change the nature or character of the offenses. The Court also finds that the evidence was sufficient for a rational trier of fact to find appellant guilty of four counts of obtaining money by false pretenses, four counts of embezzlement, and one count of grand larceny. In addition, we find that the trial court did not err in denying appellant's pretrial motion to elect and appellant's pretrial motion for a bill of particulars. Finally, appellant admits that she did not preserve her fourth assignment of error for appeal. While she has argued that this Court should employ the ends of justice exception, she has simply failed to demonstrate why the application of the ends of justice exception is necessary to avoid a grave injustice on the four obtaining money by false pretenses felony convictions. Consequently, this Court does not reach the merits of appellant's fourth assignment of error.

For all of these reasons, we affirm the judgment of the trial court.

Affirmed.