COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Fulton and Lorish
Argued at Norfolk, Virginia

PUBLISHED

ALISON HELENA MORONEY

                                                           OPINION BY
v.          Record No. 0085-24-1                JUDGE RANDOLPH A. BEALES
                                                          DECEMBER 10, 2024

KELLY LYNN MAJERUS, ET AL.


FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
W. Revell Lewis, III, Judge

(Anita C. Johnson, on brief), for appellant.  Appellant submitting on
brief.

Brook M. Thibault (The Coastal Virginia Law Firm, on brief), for
appellees.

By final order of adoption entered on May 2, 2023, the Circuit Court of Accomack

County granted the adoption of J.T.M.[1] by his stepmother, Kelly Lynn Majerus ("stepmother").

The circuit court granted the stepparent petition for adoption under Code § 63.2-1202(H),

without the consent of J.T.M.'s biological mother, Alison Helena Moroney ("mother").  On

appeal, mother challenges the circuit court's jurisdiction to grant the stepparent petition for

adoption consistent with the Uniform Child Custody Jurisdiction and Enforcement Act, Code

§§ 20-146.1 through 20-146.38 (the "UCCJEA").  Mother also argues that the circuit court erred

in finding that her consent to the stepparent adoption was not necessary under Code

§ 63.2-1202(H), that it erred in failing to consider the best-interest-of-the-child factors set forth

in Code § 63.2-1205, and that it erred in denying her motion for a continuance.

---

[1] We use initials in an attempt to better protect the child's privacy.

## I. BACKGROUND[2]

"Because the circuit court heard evidence *ore tenus*, its factual findings are entitled to the same weight accorded a jury verdict[] and . . . will not be disturbed on appeal unless plainly wrong or without evidence to support them." *Chaphe v. Skeens*, 80 Va. App. 556, 559 (2024) (alterations in original) (quoting *Geouge v. Traylor*, 68 Va. App. 343, 347 (2017)). We view the evidence in the light most favorable to stepmother and Zachary Quinn Majerus ("father"), as the prevailing parties below, and we grant them the benefit of all reasonable inferences. *Id.*

Mother and father are the biological parents to J.T.M., who was born in Delaware in 2014. Mother and father lived in Delaware while they were in a relationship. After their relationship ended, mother and father agreed that father "would have primary residence of [J.T.M.] and that Father and [J.T.M.] could move to Virginia." In 2017, custody and visitation proceedings were initiated in the Family Court of the State of Delaware in and for New Castle County (the "Delaware court").

In September 2017, the Delaware court entered a stipulation and order modifying its existing custody and visitation order from June 2017. The Delaware court granted mother and father joint legal custody of J.T.M., with father having primary residential placement of J.T.M. and mother having visitation with J.T.M. The Delaware court also permitted father to relocate to Greenbackville in Accomack County, Virginia, and it permitted mother to relocate anywhere within the State of Delaware. Father married stepmother that same year, and the pair relocated to Accomack County, Virginia, where they have lived with J.T.M. since he was approximately three years old.

---

[2] The record in this case was sealed. "To the extent that this opinion mentions facts found in the sealed record, only those specific facts have been unsealed because they are relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Eckard v. Commonwealth*, ___ Va. ___, ___ n.1 (Aug. 1, 2024).

- 2 -

On September 8, 2022, after learning that father intended to relocate the family to Texas, mother petitioned the Delaware court to modify the existing custody and visitation order, and she also requested contact with J.T.M. while the matter was pending trial. Father opposed mother's motion, and he also moved the Delaware court to dismiss the matter for lack of jurisdiction. Father argued that Delaware was an inconvenient forum under the UCCJEA because J.T.M. had been living in Virginia since 2017, because J.T.M. had not even visited Delaware since 2019, and because the relevant evidence and witnesses were in Virginia. On October 11, 2022, the Delaware court entered an order denying father's motion to dismiss for lack of jurisdiction, finding that "Delaware is the most appropriate forum at this time" to hear the custody and visitation matter.

On October 26, 2022, stepmother and father filed a petition in the Circuit Court of Accomack County seeking leave for Stepmother to adopt J.T.M. The hearing on the stepparent petition for adoption was originally scheduled for January 6, 2023, but the circuit court was advised that "a hearing was scheduled on January 18, 2023, in the Delaware court regarding the custody, visitation and proposed relocation of father to Texas." Mother appeared *pro se* at the January 6, 2023 stepparent adoption hearing before the circuit court, and she "made no objection with respect to service of process." The circuit court continued the hearing to March 17, 2023 (after the custody and visitation hearing in the Delaware court was over). On January 11, 2023, the judges in Delaware and Virginia spoke to each other about "whether Delaware or Virginia was the appropriate jurisdiction." They discussed whether "Delaware had continuing exclusive jurisdiction under the UCCJEA," and the Virginia judge "indicated that he believed that Virginia has jurisdiction to hear the Petition for Adoption as the child had lived in Virginia for six (6) months."

On January 18, 2023, mother and father appeared before the Delaware court on mother's petition to modify custody, mother's rule to show cause petition, father's counterclaim, and father's motion to relocate to Texas. By order entered on February 22, 2023, the Delaware court awarded father sole legal and physical custody of J.T.M.; it permitted mother to have contact with J.T.M. "in the context of reunification counseling"; it granted father's motion to relocate the family to Texas; and it held mother in contempt "for failing to visit with the child and for failing to provide written notice to Father and the Court of her change of address." In so ruling, the Delaware court found that "the parties agree that, since July 1, 2019, Mother has had no contact with the child and that Mother is essentially a stranger to [J.T.M.] at this time." The Delaware court further found that "Stepmother has been involved in [J.T.M.'s] life since [he] was about one (1) year old. She has been a mother figure to [J.T.M.] and [he] calls her mom now." In addition, the Delaware court noted that "Mother concedes that she is essentially a stranger to [J.T.M.] at this time and would need to resume contact with him in the context of reunification counseling." The Delaware court emphasized that "[t]here appears to be no dispute that the child has a good relationship with Father and Stepmother whom he considers his mother" and that "[t]here is no dispute that Mother has no relationship with the child at this time." Finding mother's testimony to be not credible, the Delaware court stated that it "does not believe that father kept the child from mother and, instead, believes that mother failed to exercise her visitation rights." The Delaware court copied the Virginia judge on its February 22, 2023 order.

On March 17, 2023, the parties appeared before the Circuit Court of Accomack County on the stepparent petition for adoption. The circuit court "heard and considered the evidence presented which included the testimony of Kelly Lynn Majerus, Zachary Quinn Majerus, Alison Moroney, Terry Moroney (Alison's father), and Tyler Allen (Alison's live in boyfriend)." In the signed written statement of facts in lieu of a transcript, the circuit court noted that mother "did

not provide Father with the names of the reunification counselors prior to the March 17, 2023 hearing, although she did indicate that she had just provided her attorney with such names." After hearing the evidence, the circuit court found that stepmother and father had "satisfied the statutory requirements for the stepparent adoption and that it was in the child's best interest to be adopted by his stepmother, who had been in his life since he was one year old." The circuit court further found by clear and convincing evidence pursuant to Code § 63.2-1202 that mother had "not visited nor contacted the minor child for a period of six months immediately preceding the filing" of the stepparent petition for adoption and that "it is in the best interest of the minor child to grant" the stepparent adoption.

On May 2, 2023, the circuit court entered the final order of adoption granting stepmother's adoption of J.T.M. Mother appeals to this Court.

## II. ANALYSIS

### A. Jurisdiction for Adoption Proceedings

On appeal, mother argues that the circuit court was without jurisdiction to grant the petition for adoption because

> the Delaware Court had retained jurisdiction over the Child and had entered a Final Order on February 22, 2023, granting Mother's Petition to Modify Custody and Visitation, and awarding her the right to begin contact with her Child with reunification counseling and as a part of that Order, included language that future modifications shall be made only pursuant to 13 Del. C. § 729(c).

The Supreme Court has defined "jurisdiction" as "the power to adjudicate a case upon the merits and dispose of it as justice may require." *Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018) (quoting *Shelton v. Sydnor*, 126 Va. 625, 629 (1920)). "Before any court can proceed to the adjudication of a given case, it must first determine whether it has subject matter jurisdiction over the case." *Hood v. Commonwealth*, 75 Va. App. 358, 363 (2022). "'Jurisdiction of the subject matter can only be acquired by virtue of

the Constitution or of some statute,' and it 'refers to a court's power to adjudicate a class of cases or controversies.'" *Cilwa v. Commonwealth*, 298 Va. 259, 266 (2019) (first quoting *Pure Presbyterian Church*, 296 Va. at 56; and then quoting *In re Commonwealth*, 278 Va. 1, 11 (2009)). "Neither the consent of the parties, nor waiver, nor acquiescence can confer it." *Spanos v. Taylor*, 76 Va. App. 810, 818 (2023) (quoting *Pure Presbyterian Church*, 296 Va. at 49). "[T]he lack of subject matter jurisdiction can be raised at any time in the proceedings, even for the first time on appeal by the court *sua sponte*." *Holden v. Commonwealth*, 26 Va. App. 403, 407 (1998) (quoting *Morrison v. Bestler*, 239 Va. 166, 170 (1990)). A "court's jurisdiction is a question of law that is reviewed *de novo* on appeal." *Johnson v. Johnson*, 72 Va. App. 771, 777 (2021) (quoting *Brown v. Brown*, 69 Va. App. 462, 468 (2018)).

The UCCJEA is a uniform law that establishes the jurisdictional framework for child custody determinations. "Where multiple states or foreign countries have potential initial jurisdiction over child custody," the UCCJEA "dictates where actual jurisdiction shall be exercised." *Prizzia v. Prizzia*, 58 Va. App. 137, 146-47 (2011). In Virginia, the UCCJEA has been adopted and codified in Code §§ 20-146.1 through 20-146.38. The general purposes of the UCCJEA include "[a]void[ing] jurisdictional competition and conflict with the courts of other states in matters of child custody," "[p]romot[ing] cooperation" and "the exchange of information" with the courts of other states, "[d]iscourag[ing] continuing controversies over child custody," and "[a]void[ing] relitigation of custody decisions." Code § 20-146.38(A). Under the UCCJEA, Virginia courts may not exercise jurisdiction over a child custody matter if such a proceeding has already commenced in a court of another state having jurisdiction in substantial conformity with the UCCJEA. Code § 20-146.17(A) ("Except as otherwise provided in [Code] § 20-146.15, a court of this Commonwealth may not exercise its jurisdiction under this article if, at the time of the commencement of the proceeding, a proceeding concerning the

- 6 -

custody of the child has been previously commenced in a court of another state having jurisdiction substantially in conformity with this act, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this Commonwealth is a more convenient forum under [Code] § 20-146.18."). Instead, Virginia courts must "recognize and enforce" child custody determinations made by courts of other states when those courts exercised jurisdiction in substantial conformity with the UCCJEA. Code § 20-146.24(A).

Virginia's sister state of Delaware, like nearly every other state, has also adopted and codified the UCCJEA. 13 Del C. §§ 1901 through 1943. However, the Delaware statute codifying the UCCJEA specifies that "[t]his chapter does not govern a termination of parental rights proceeding related to an adoption proceeding brought by a licensed Delaware agency *or an adoption proceeding* or a proceeding pertaining to the authorization of emergency medical care for a child." 13 Del C. § 1903 (emphasis added). Likewise, the Virginia statute codifying the UCCJEA specifies that it "*does not govern an adoption proceeding* or a proceeding pertaining to the authorization of emergency medical care for a child." Code § 20-146.2 (emphasis added). Thus, both the Delaware statute codifying the UCCJEA and the highly similar Virginia statute codifying the UCCJEA contain explicit statutory carveouts establishing that adoption proceedings are not governed by the requirements of the UCCJEA, including for the purpose of jurisdiction.

At the same time, we recognize that the Virginia statute codifying the UCCJEA defines "[c]hild custody proceeding" to mean "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue" — which includes "a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear." Code § 20-146.1. This recognition, however, does not change our analysis here. While it is true that, in Virginia, an

adoption by a stepparent does result in the termination of the remaining parental rights of the nonconsenting biological parent by implication, this impact of a final order of adoption does not convert a stepparent adoption proceeding into a termination of parental rights proceeding under Virginia law. Indeed, a separate termination of parental rights proceeding is not required in Virginia before a stepparent adoption may take place.

In this way, the statutory framework for a stepparent adoption in Virginia is distinguishable from that of some other states that have found that an adoption involving a separate termination of parental rights order or proceeding is governed by the UCCJEA. For example, in Colorado, a stepparent adoption proceeding involving a nonconsenting birth parent requires the court also to enter a separate order terminating the parental rights of the nonconsenting birth parent. *In re M.M.V.*, 469 P.3d 556, 560 (Colo. Ct. App. 2020). The Colorado Court of Appeals has found that, "while the UCCJEA does not govern a proceeding that solely involves the adoption of a child, it does apply to the portion of a stepparent adoption case that concerns the termination of parental rights." *Id.* Likewise, in South Carolina, a "nonconsensual adoption action . . . require[es] a bifurcated proceeding since an adoption may not proceed . . . without first obtaining a termination of parental rights." *Anthony H. v. Matthew G.*, 725 S.E.2d 132, 134 (S.C. Ct. App. 2012) (alterations in original) (quoting *Brookshire v. Blackwell*, 682 S.E.2d 295, 297 n.7 (S.C Ct. App. 2009)). The South Carolina Court of Appeals has concluded that the UCCJEA applies to a stepparent adoption proceeding under South Carolina law because it first requires the termination of the nonconsenting birth parent's parental rights. *Id.*

On the other hand, where a state's statutes governing a stepparent adoption proceeding are sufficiently separate from the general process of terminating parental rights, courts have reached the opposite conclusion. For example, the Kentucky Court of Appeals has concluded

that, because a stepparent adoption without the consent of the biological parents by itself terminates parental rights and does not require a separate termination of parental rights under Kentucky's termination of parental rights statute, the stepparent adoption proceeding is not governed by the UCCJEA. *R.V.K.H. v. S.M.S.*, 678 S.W.3d 648, 650-51 (Ky. Ct. App. 2023). Similarly, the Utah Supreme Court has recognized that, although proceedings to terminate parental rights under Utah's Termination of Parental Rights Act are considered "child custody proceedings" that are subject to the UCCJEA, the termination of any pre-existing parental rights as part of an adoption proceeding "is procedurally different than such a proceeding brought under the Termination of Parental Rights Act," and thus the UCCJEA does not govern termination of parental rights proceedings instituted under Utah's adoption statutes. *P.H. v. C.S. (In re Adoption of B.H.)*, 474 P.3d 981, 989 (Utah 2020).

Under Virginia law, in cases involving adoption by a stepparent, the

> birth parents, and the parents by previous adoption, if any, other than any such parent who is the husband or wife of one of the petitioners, shall, by final order of adoption, be divested of all legal rights and obligations in respect to the child including the right to petition any court for visitation with the child.[3]

Code § 63.2-1215(A). Thus, "[w]hen a court allows a non-biological mother to adopt a child, the adoption order severs the parent-child relationship between the biological mother and the child,

---

[3] The same is true in Delaware:

> Upon the issuance of a decree of adoption, the adopted child shall no longer be considered the child of such child's birth parent or parents and shall no longer be entitled to any of the rights or privileges or subject to any of the duties or obligations of a child with respect to the birth parent or parents; but, when a child is adopted by a stepparent such child's relationship to the birth parent who is married to the stepparent shall in no way be altered by reason of the adoption.

13 Del C. § 919.

meaning that, as a matter of law, the child has only one mother." *Bedell v. Price*, 70 Va. App. 497, 506 n.6 (2019). Code § 63.2-1215(A) does not use the phrase "termination of parental rights" and instead explains the legal effect of a "final order of adoption," which is to divest any other parent with an interest in the child "of all legal rights and obligations." This process is distinct from the separate process for termination of parental rights under Code § 16.1-283. For these reasons, a stepparent adoption proceeding is not a proceeding to terminate parental rights under Virginia law.

In this case, the Delaware court properly exercised continuing jurisdiction in accordance with the UCCJEA over the child custody and visitation matter concerning mother, father, and J.T.M. The custody and visitation proceedings were initiated in the Delaware court in 2017, and the Delaware court entered several orders and made various rulings regarding custody and visitation, most recently in February 2023. However, the fact that the Delaware court properly exercised its jurisdiction over that custody and visitation matter did not by itself preclude the circuit court in Virginia from granting the stepparent petition for adoption. As both Virginia law and Delaware law make clear, the UCCJEA does not control adoption proceedings. *See* Code § 20-146.2; 13 Del C. § 1903. Therefore, the Circuit Court of Accomack County was not without jurisdiction to grant the stepparent petition for adoption even though the Delaware court simultaneously maintained continuing jurisdiction over the separate child custody and visitation matter.

### B. Parental Consent and the Best Interest of the Child

Mother next argues that the circuit court erred in finding that her "consent was not necessary under [Code] § 63.2-1202(H)" to grant the petition for adoption. She contends that the circuit court erred in "finding that her lack of contact was unjustified," and also erred in "not allowing her the opportunity to cure the abandonment under the provisions of the Delaware

custody Order." Mother further argues that the circuit court erred in "granting the adoption over her objections without considering all relevant factors set forth in [Code] § 63.2-1205."

"Adoption in Virginia is solely a creature of statute." *Perkins v. Howington*, 82 Va. App. 1, 8 (2024) (quoting *Berry v. Barnes*, 72 Va. App. 281, 287 (2020)). Virginia law recognizes five types of adoptions: agency adoptions (Code §§ 63.2-1221 through 63.2-1229); parental placement adoptions (Code §§ 63.2-1230 through 63.2-1240); stepparent and confirmatory adoptions (Code §§ 63.2-1241 through 63.2-1242); close relative adoptions (Code §§ 63.2-1242.1 through 63.2-1242.3); and adult adoptions (Code §§ 63.2-1243 through 63.2-1244). The type of adoption in this case was a stepparent adoption.

Code § 63.2-1201 specifies the requirements for filing a stepparent petition for adoption. The petition must be filed "in the county or city in which the petitioner resides." Code § 63.2-1201. The petition must "contain a full disclosure of the circumstances under which the child came to live, and is living, in the home of the petitioner." *Id.* The spouse of the stepparent must "unite in the petition for the purpose of indicating consent" to the stepparent adoption. *Id.* In addition, the petition normally also requires the non-petitioning birth parent's "written consent to the proposed adoption" that is "signed under oath and acknowledged before an officer authorized to take acknowledgments." Code § 63.2-1202(A). In this case, mother did not consent to the stepparent petition for adoption.

However, the stepparent "adoption may proceed without a birth parent's consent when the prospective adoptive parent proves by clear and convincing evidence that the biological parent has failed, without just cause, to visit or contact the child 'for a period of six months prior to the filing of the petition for adoption.'" *Copeland v. Todd*, 282 Va. 183, 193 (2011) (quoting Code § 63.2-1202(H)). This Court has recently explained that "[t]o constitute 'just cause,' a parent's failure to visit or communicate must be due to factors *beyond [her] control*." *Perkins*,

- 11 -

82 Va. App. at 10 (alterations and emphasis in original) (quoting *Adoption of Dore*, 469 So. 2d 491, 494 (La. App. 3d Cir. 1985)).

Furthermore, in "determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child," a circuit court must "consider whether granting the petition pending before it would be in the best interest of the child." Code § 63.2-1205. In determining the best interest of the child, the circuit court, in turn, must

> consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

*Id.* As this Court has recognized, "The weighing of the statutory factors [in Code § 63.2-1205] is, by necessity, fact-specific and highly discretionary. The discretion to make the relevant determinations is vested where the judicial branch comes into the closest contact with the child, the biological parents, and the prospective adoptive parents — the circuit court." *Chaphe*, 80 Va. App. at 564 (alteration in original) (quoting *Geouge*, 68 Va. App. at 372). "An appellate court 'will not second-guess the circuit court's exercise of judgment regarding the statutory factors.'" *Id.* (quoting *Geouge*, 68 Va. App. at 372).

The statutory scheme for a stepparent adoption provides that if,

> after consideration of the evidence, the circuit court finds that the valid consent of any person or agency whose consent is required is withheld contrary to the best interests of the child as set forth in [Code] § 63.2-1205, or is unobtainable, the circuit court may grant the petition without such consent.

Code § 63.2-1203.

In this case, in the final order of adoption, the circuit court found that "the natural mother Alison Helena Moroney has been absent from the minor child, [J.T.M.,] for several years." The circuit court further found "by clear and convincing evidence that biological mother has not visited nor contacted the minor child for a period of six months immediately preceding the filing of" the stepparent petition for adoption and that "it is in the best interest of the minor child to grant [stepmother's] request for adoption."

In addition, in the signed written statement of facts in lieu of a transcript, the circuit court noted that the Delaware court "found that it is undisputed that Mother has not visited with or seen the child since July 1, 2019," and it further noted that the Delaware court held mother in contempt "for failing to exercise her visitation" with J.T.M. Although the Delaware court "directed that Mother may begin contact with the child in the context of reunification counseling and directed that she shall supply to Father the names of at least two counselors who are willing to begin reunification counseling," the circuit court found that "Mother did not provide Father with the names of the reunification counselors prior to the March 17, 2023 hearing." The circuit court expressly attached and incorporated by reference the Delaware court's February 22, 2023 order to the signed written statement of facts in lieu of a transcript. The circuit court then concluded that stepmother and father "had satisfied the statutory requirements for the stepparent adoption and that it was in the child's best interest to be adopted by his stepmother, who had been in his life since he was one year old."

The limited record before this Court on appeal supports a finding that stepmother and father proved by clear and convincing evidence that mother had failed, without just cause, to visit or contact J.T.M. for a period of at least six months prior to the filing of the stepparent petition for adoption. Code § 63.2-1202(H). Mother has had no contact with J.T.M. for several years, and she is essentially a stranger to J.T.M. As the Delaware court so found, it is clear that

- 13 -

mother "has not exercised her rights and responsibilities as a parent," and mother's assertion that

father prevented her from seeing J.T.M. is "without merit." The record likewise supports a

finding that granting the stepparent petition for adoption was in the best interest of J.T.M. Code

§ 63.2-1205. Stepmother has been involved in J.T.M.'s life since he was one year old.

Stepmother has clearly been the mother figure to J.T.M., and J.T.M. even calls stepmother

"mom."

In short, mother has simply not shown that her failure to visit or contact J.T.M. was due

to factors beyond her control. *Perkins*, 82 Va. App. at 10. Furthermore, mother cites no

authority for her argument that she should have been allowed to cure her alleged abandonment of

J.T.M., given that the Delaware court awarded her the right to initiate visitation in the context of

reunification counseling. *See Davis v. Commonwealth*, 70 Va. App. 722, 738 (2019) (holding

that the appellant waived his argument by failing to cite authority "to support his argument").

Consequently, the circuit court did not err in granting the stepparent petition for adoption.

### C. Motion for a Continuance

Mother also argues that the circuit court erred in denying her pretrial motion for a

continuance.

> The decision to grant a motion for a continuance is within
> the sound discretion of the circuit court and must be considered in
> view of the circumstances unique to each case. The circuit court's
> ruling on a motion for a continuance will be rejected on appeal
> only upon a showing of abuse of discretion *and* resulting prejudice
> to the movant.

*Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007) (emphasis in original).

"The absence of one renders inconsequential the presence of the other." *Bolden v.*

*Commonwealth*, 49 Va. App. 285, 290 (2007), *aff'd*, 275 Va. 144 (2008). "Prejudice, moreover,

'may not be presumed; it must appear from the record.'" *Id.* (quoting *Lowery v. Commonwealth*,

9 Va. App. 304, 307 (1990)). "To establish the necessary prejudice, [mother] must do more than

note she lost the case; she must establish that the decision to deny her a continuance prevented her from presenting her case or otherwise caused her to lose the case." *Geouge*, 68 Va. App. at 374.

The record before this Court on appeal shows that mother participated at the stepparent adoption hearing on March 17, 2023 — she appeared and was represented by counsel, she presented evidence, she testified, and she had witnesses testify on her behalf. *Cf. id.* The signed written statement of facts in lieu of a transcript notes that mother was also present at the originally scheduled hearing on January 6, 2023, when the circuit court continued the matter to March 17, 2023, due to the upcoming custody and visitation hearing before the Delaware court. At the hearing on March 17, 2023, the circuit court specifically "heard and considered the evidence presented which included the testimony of Kelly Lynn Majerus, Zachary Quinn Majerus, Alison Moroney, Terry Moroney (Alison's father), and Tyler Allen (Alison's live in boyfriend)." In short, the record supports a finding that "[t]he circuit court's ultimate ruling against her was the result of its determination of the facts of the case and not the result of the denial of her continuance request." *Geouge*, 68 Va. App. at 374. Consequently, given mother's failure to demonstrate the necessary prejudice, we cannot say that the circuit court erred in not granting her continuance request.[4]

### D. Mother's Additional Arguments

Subsumed in mother's assignments of error are additional claims that she "was not given adequate notice and opportunity to present evidence at trial," that she was not served with the stepparent petition for adoption, and that she was not served "with proper notice of the date and the subject matter" of the stepparent adoption hearing on March 17, 2023. Mother asserts that

---

[4] Because we are not persuaded by mother's claim of prejudice, we do not need to reach her abuse-of-discretion argument. *See Bolden*, 49 Va. App. at 290.

she retained counsel just two days before the hearing, that she did not discover the posted notice of hearing on the door of her residence until March 12, 2023, and that she never received a copy of stepmother's and father's requests for admission. These assertions, however, rely on purported facts that are not in the record before this Court on appeal.

> No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review.

Rule 5A:18. "It is the appellant's burden to obtain a clear ruling from the [circuit] court on an issue he wishes to raise on appeal. This burden stems from the requirement that a litigant state an objection with reasonable certainty at the time of the ruling." *Northcraft v. Commonwealth*, 78 Va. App. 563, 610 n.17 (2023) (alteration in original and internal quotations omitted) (quoting *McDaniel v. Commonwealth*, 73 Va. App. 299, 313 (2021)).

"When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). "An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court. We may act only upon facts contained in the record." *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993); *see also Browning v. Browning*, 68 Va. App. 19, 26-27 (2017). "The burden is upon the appellant to provide us with a record which substantiates the claim of error. In the absence [of a sufficient record], we will not consider the point." *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007) (alteration in original) (quoting *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1185 (1991)).

Here, the record before this Court on appeal does not include a transcript of the originally scheduled stepparent adoption hearing on January 6, 2023, nor does it include a transcript of the

- 16 -

continued stepparent adoption hearing on March 17, 2023. Instead, the record includes a written statement of facts in lieu of a transcript for the hearing on March 17, 2023, which was signed by the circuit court judge on December 6, 2023.[5] *See* Rule 5A:8(d)(5) ("The judge's signature on a transcript or written statement, without more, constitutes certification that the procedural requirements of this Rule have been satisfied."). However, that signed written statement of facts in lieu of a transcript does not contain the circuit court's rulings on mother's allegations concerning improper service of process and inadequate notice of hearing, nor do such rulings appear elsewhere in the record. Therefore, we cannot consider mother's additional arguments.

To the extent that mother's additional arguments are based on facts not in the record before this Court on appeal, mother asks this Court to consider them under the ends of justice exception to Rule 5A:18. It is well established that "[t]he ends of justice exception is narrow and is to be used sparingly, and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (*en banc*)). "Whether to apply the ends of justice exception involves two questions: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'" *Id.* at 682-83 (quoting *Commonwealth v. Bass*, 292 Va. 19, 27 (2016)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Id.* at 683 (quoting *Holt*, 66 Va. App. at 210). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Id.* (alteration and emphasis in original) (quoting *Holt*, 66 Va. App. at 210).

---

[5] To the extent that certain facts and rulings may appear in mother's original written statement of facts in lieu of a transcript that she filed with the circuit court on June 29, 2023, that written statement of facts in lieu of a transcript did not become part of the record before us on appeal because it was not signed by the circuit court judge and, therefore, did not comply with the requirements of Rule 5A:8. *See Mayhood v. Mayhood*, 4 Va. App. 365, 368-69 (1987).

We are not persuaded by mother's claim that she was not provided with adequate notice of the stepparent adoption hearing on March 17, 2023, or that she was not afforded an opportunity to present evidence at that hearing. As noted *supra*, the signed written statement of facts in lieu of a transcript shows that mother had proper notice well in advance of the hearing on March 17, 2023, as she was present at the originally scheduled stepparent adoption hearing on January 6, 2023 — when the circuit court continued the hearing to March 17, 2023, due to the upcoming custody and visitation hearing before the Delaware court. The circuit court noted that mother "made no objection with respect to service of process" at the originally scheduled hearing on January 6, 2023. The signed written statement of facts in lieu of a transcript further shows that mother participated in the hearing on March 17, 2023. She appeared and was represented by counsel, she testified, she had witnesses testify on her behalf, and she presented evidence. Consequently, we cannot say that mother has affirmatively shown that a miscarriage of justice has occurred to warrant application of the ends of justice exception to Rule 5A:18.

### III. CONCLUSION

For all of the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*