COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Chaney and Lorish

GABRIEL URIJAH DAVIS

v.       Record No. 0637-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
JANUARY 31, 2023

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge Designate

(Vaughan C. Jones, on brief), for appellant.

(Jason S. Miyares, Attorney General; Elizabeth Kiernan Fitzgerald,
Assistant Attorney General, on brief), for appellee.


A jury convicted Gabriel Urijah Davis of forcible sodomy, and the Circuit Court of the

City of Richmond sentenced him to five years' imprisonment with four years and nine months

suspended.  On appeal, Davis challenges the sufficiency of the evidence, but he failed to preserve

this issue by renewing his motion to strike the Commonwealth's evidence at the end of trial or by

moving to set aside the verdict.  Therefore, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).

And we affirm.

BACKGROUND

S.W. attended a social gathering at a residence in Richmond with several friends.  Davis also

attended the gathering. S.W. "knew mostly everybody" at the gathering besides Davis.  The

attendees played drinking games throughout the evening, and S.W. drank three or four cups of

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Hennessy cognac and soda. S.W. interacted with Davis during the games but did not have a "one-on-one interaction" with him.

Sometime during the gathering, S.W. got sick and threw up in the bathroom. Around midnight, he sat on a couch in the living room. His friends told S.W. that he was drunk and laughed at him. S.W. then fell asleep on the couch. While he was asleep, he "felt somebody on [his] hip" and thought "it was probably one of [his] close friends." S.W. awoke when he felt "pain in [his] penis." When he awoke, his penis was in Davis's mouth, and he had ejaculated. S.W. kicked Davis twice and exclaimed: "What the fuck is wrong with you?" S.W. remembers Davis responding, "My bad, bro. Or something like that." Davis then went to sleep on a separate love seat.

S.W. "got up to try to leave . . . but [he] was so drunk that [he] just laid back down and . . . went back to sleep." When he woke again, he and Davis were the only people in the apartment. S.W. previously had planned to go to an amusement park the next morning with the friends he had gone to the party with, but decided not to attend. When he called one of the friends around 7:00 a.m. to tell him that he was not going, he was "very upset" and "not himself." At that friend's direction, S.W. drove to his residence, where he told all three friends he had been with the prior evening "exactly what happened . . . with Davis." One friend described S.W. as "very anxious," "shaken," and "actively crying." S.W. then went to the hospital for a forensic examination. Subsequent forensic analysis determined that Davis could not be eliminated as a contributor to the DNA profile obtained from the swab of S.W.'s penis.

Three days after the party, Davis called Richmond Police Detective Gregory Russell, stating that he was "the one the police need[ed] to speak with regarding the allegation." Davis acknowledged that he was at the gathering and that he saw S.W. sleeping on the couch. When asked if Davis had "any sexual contact or any other contact with" S.W., Davis responded: "No. Absolutely zero contact, none." Detective Russell interviewed Davis again following his arrest and

told him Russell believed that Davis's DNA "was going to come back on the victim." Davis "would not answer" and declined the opportunity to "explain what took place that night."

At trial, Davis testified that he attended the party because he was friends with one of S.W.'s friends. According to Davis, during the drinking games he and S.W. had "extended eye contact" that Davis characterized as "eye fucking." Davis knew that S.W. had thrown up and saw him sleeping on the living room couch. Davis sat on the same couch and when he "[got] tired of sitting up," he "lean[ed] over" and was "touching [S.W.'s] hip." S.W. then "turn[ed] over," and Davis's "face end[ed] up in [S.W.'s] crotch." S.W. then "pushed his hips forward," bringing his penis closer to Davis.

Davis then "test[ed] the waters" by "rubbing" S.W.'s penis. Davis testified that S.W. "moaned" and did a "hip thrust," and then he "went forward" after S.W.'s "legs opened a little wider," which Davis described as a "welcoming." He pulled S.W.'s penis out of his pants and performed oral sex until S.W. ejaculated. Davis stated that S.W. made "no verbal communication" and gave no indication that he wanted Davis to stop.

The jury convicted Davis of forcible sodomy. This appeal followed.

ANALYSIS

In his sole assignment of error, Davis asserts that the evidence was insufficient to sustain his conviction for forcible sodomy because the Commonwealth failed to prove beyond a reasonable doubt that he accomplished the sodomy by "force" or using S.W.'s "mental incapacity or physical helplessness." This argument was not properly preserved for appeal, however, so we cannot consider it. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve

the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015).

A challenge to the sufficiency of the evidence to sustain a conviction is a legal issue that the court will decide. *See Dickerson v. Commonwealth*, 58 Va. App. 351, 357 (2011). In a bench trial, the defense may preserve a challenge to the sufficiency of the evidence through "an appropriate argument made during closing." *Id.* at 356. In a jury trial when the defendant presents evidence, however, the defendant must preserve a challenge to the sufficiency of the evidence in a motion to strike at the end of all the evidence or by moving to set aside the verdict. *Commonwealth v. Bass*, 292 Va. 19, 33 (2016).

While Davis moved to strike the evidence as insufficient after the Commonwealth rested, that motion was not renewed after the defense presented its case. When a criminal defendant "proceeds to introduce evidence in his own behalf, after the trial court has overruled his motion to strike, made at the conclusion of the introduction of [the Commonwealth's] evidence in chief, he waives his right to stand upon such motion." *McDowell v. Commonwealth*, 282 Va. 341, 342 (2011) (quoting *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 73 (2010)). Rather, "the defendant must renew the motion to strike at the conclusion of all the evidence," or move to set aside the verdict. *Id.*; *Bass*, 292 Va. at 33. Davis does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and we will not apply the exceptions sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

CONCLUSION

Accordingly, we affirm the circuit court's judgment.

*Affirmed*.