COURT OF APPEALS OF VIRGINIA

Present: Judges Ortiz, Raphael and White

DORNELL MARCUS COLLINS, JR.

                                                 MEMORANDUM OPINION[*] BY

v.        Record No. 1956-23-1              JUDGE KIMBERLEY SLAYTON WHITE
                                                      MARCH 18, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

(Roger A. Whitus; Slipow & Robusto P.C., on brief), for appellant.

(Jason S. Miyares, Attorney General; Matthew P. Dullaghan,[1] Senior
Assistant Attorney General, on brief), for appellee.

A jury convicted Dornell Marcus Collins, Jr., of voluntary manslaughter (on an original charge of second-degree murder) and possession of a firearm on school property.[2] The trial court sentenced Collins to 15 years' imprisonment. On appeal, Collins challenges the sufficiency of the evidence to sustain either conviction. He contends that the evidence supported his claim of self-defense, so he was not guilty of voluntary manslaughter, and that the evidence did not prove that the firearm was found on school property. After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). Finding the evidence sufficient on the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Matthew P. Dullaghan became an employee of this Court on February 10, 2025. He has had no involvement in the Court's review of this case.

[2] The jury acquitted Collins of use of a firearm in the commission of murder.

firearm on school property conviction and that Collins has not preserved a sufficiency challenge to his manslaughter conviction, we affirm.

BACKGROUND[3]

In the early afternoon of July 22, 2020, Shawn Sherman met his friend Nicholas Lutz at Lutz's home. They went to a "couple of different places," where they each had "a beer or two," before walking to Alibi's bar in Virginia Beach. "[O]n the way to Alibi's or . . . on the way back to Alibi's later on," the two "bumped shoulders" with Collins. Collins asked "if there was any problems," and Sherman responded, "Yeah, what's your problem." When Collins drew a gun, Sherman said, "I don't have a problem that big," and he and Lutz "kept it moving." Sherman stated that he was not armed and that he did not see Lutz with a gun.

They arrived at Alibi's around 6:00 p.m., where bartender Shannon Rosenthal served them. Rosenthal was familiar with Lutz, who came to the bar about twice a week, and knew Sherman through Lutz. After spending about an hour at Alibi's, Sherman and Lutz left for a birthday party on foot. They came upon Collins near Lutz's apartment building, recognizing him as the man they had encountered earlier that evening. Collins was "standing still," and he and Lutz "exchanged some words." Lutz and Collins stood about six or seven feet apart and faced each other. Collins drew his gun and fired at Lutz. Lutz, who never touched Collins and was unarmed, then fell to the ground. Collins "took off" as Sherman tried to tend to Lutz's wounds and call 911. Sherman estimated that about an hour elapsed between their initial encounter with Collins and the shooting.

---

[3] Under settled appellate principles, "we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Lay witnesses and law enforcement witnesses corroborated the events, including that neither Sherman nor Lutz were armed, that Lutz never touched Collins, and that Collins fled the scene, towards a school, after he shot Lutz. The medical examiner provided additional corroboration that Lutz was shot from a distance.[4]

Virginia Beach K-9 Officer Daniel Herring and his police-dog Cooper were dispatched to the scene, which was just west of Holland Elementary School. Based on information he received from other officers and a witness, Herring went to Holland Elementary School. Herring searched the right-hand side of the school, which had "a little section of . . . woods or overgrown thicket area off the right-hand side of the school, and that back[ed] up to a large fence that ha[d] a car lot on either side of it." When Cooper alerted, Herring saw "a strap of a backpack sitting there," so he let Cooper run into the woods. Herring radioed other officers for assistance, and upon their arrival, they secured the backpack. After officers removed the backpack, Herring again allowed Cooper to run to the woods. The officers recovered several items from the wooded area, including a firearm in the pine straw that was "close by" the backpack's location. Virginia Beach Police Detective Chris Jachimiak described the wooded area as "along a chain link fence within the property of the school. The chain link fence divided the school property."

Forensic evidence technician Jake Arnold arrived at the scene at 10:02 p.m., recovering various items from Lutz's pockets and performing a gunshot residue test on his hands. He also collected from the roadway the six shell casings an officer at the scene of the shooting had marked. Arnold was then "directed to the woodline at Holland Elementary School where" the other officers had found items of evidence. The backpack that officers had recovered in the woods on school

---

[4] Because Collins has not preserved a sufficiency challenge to his manslaughter conviction, we do not set forth this corroborating evidence in detail.

- 3 -

grounds contained a pill bottle and documents bearing Collins's name. Police officers executed a search warrant on Collins's home at 4:30 the following morning.

Arnold also recovered a black Luger handgun that the other officers had found "inside that woodline where the other evidence was found near the parking lot of Holland Elementary School." A magazine was inside the handgun. Arnold swabbed the handgun and magazine for DNA. Subsequent forensic analysis was inconclusive because there was insufficient DNA recovered from the firearm to develop "a meaningful profile." Likewise, Arnold processed the gun and other items found at the scene for fingerprints. A latent fingerprint examiner determined that Collins's fingerprint was on the magazine and his palm print was on a document recovered from the woods. In total, four latent palm prints and two fingerprints recovered were identified as Collins's.

Dr. Callie Richardson, the principal of Holland Elementary School, testified that he had held that position for 12 years and had attended the school as a student, so was familiar with it. Richardson stated that the woods depicted in Commonwealth's Exhibit 10 were on school grounds. Richardson also stated that another picture of the school grounds admitted as Commonwealth's Exhibit 24 depicted "a security fence up and bushes along that fence just to make sure that the students are safe and kept within the grounds of" the school.

Chris Luckie, an expert on firearms and toolmarks, examined the handgun the police had found in the woods at Holland Elementary School, the six shell casings, two bullets recovered during Lutz's autopsy, and a bullet fragment. Luckie determined that the gun had fired all the bullets and shell casings. Further, Luckie examined the items of Lutz's clothing for gunshot residue and saw no evidence of particles, thus indicating that the muzzle of the gun had been at a greater distance from Lutz than two and a half to three and a half feet.

Testifying in his own behalf, Collins stated that he left work around 8:30 p.m. and was headed to a convenience store on Holland Road to eat when he was "ambushed" by two men, who

"bumped into [him] or pushed up on [him]." The men appeared to be "under the influence" and "started yelling." Initially unsure if the men had intentionally collided with him, Collins "asked them were they all right because [he] didn't know what was going on." Collins admitted that he was angry after the bump. After one of the men responded that "you know what time it is," Collins decided to "get away from [them] as quick[ly] as [he] could as quick[ly] as possible, but [he] was injured around that time." Collins claimed that he "was scared for [his] life" and was trying to "get back home." As the men chased after him, Collins tried to put his wallet and other items in his backpack so that they would not fall to the ground where the men could pick them up and potentially discover his home address.

Collins's pursuers caught up with him after about 200 meters because of his bad knee. "[C]ornered," Collins told Lutz to "go home to your family, let me do the same," but Lutz tried to draw his gun. At the time, the second man was "a little distance away from him" and Collins "couldn't really see him." Collins testified that he tried to knock the gun from Lutz's hand, but two shots went off. Then, as he and Lutz struggled for the gun and they started falling forward toward the median, two more shots were fired. According to Collins, all the shots were fired while the gun was in Lutz's hand. Collins acknowledged that he touched the gun during the struggle but said he did not touch the trigger.

At that point, Collins picked up the gun from the ground and ran off as the second man pursued him. Collins then "took cover behind the bush" and checked to see if he had been wounded during the encounter. There, Collins discarded the backpack because its weight was slowing him down. Collins then checked the gun to see if it had any more ammunition but then abandoned it "in the wooded area in the bushes" because he had "no use" for it. Once he was satisfied that no one was chasing him, Collins went home. He was at the home when the police executed a search warrant at 4:30 a.m. and arrested him.

Following his jury trial, Collins was convicted of voluntary manslaughter and possession of a firearm on school property and sentenced to 15 years' imprisonment. Collins appeals.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Collins challenges the sufficiency of the evidence supporting his conviction for possession of a firearm on school property. It is a Class 6 felony if a person "knowingly possesses any firearm . . . while such person is upon . . . the property of any . . . public . . . elementary . . . school, including buildings and grounds." Code § 18.2-308.1(B). Viewing the evidence in the light most favorable to the Commonwealth, we reject Collins's argument that the

evidence did not prove that the firearm was found on the grounds of Holland Elementary School and thus affirm his conviction.

Collins bases his argument almost entirely on claimed uncertainties in the school principal's testimony, but the jury was permitted to credit Richardson's testimony as the school's principal. Collins fails to mention other evidence the Commonwealth adduced refuting his sufficiency claim.

Richardson's familiarity with the school dated back to his attendance there as a pupil and continued through his 12 years as principal. Richardson stated that the woods were on school property. What is more, the parties stipulated that: "On July 22, 2020, Former Virginia Beach Police Officer Zachary Harrington located . . . a Burton multicolored backpack and its contents, *on the grounds of* Holland Elementary School located at 3340 Holland Road, Virginia Beach, Virginia 23452." (Emphasis added). The officers testified that the gun was recovered in pine straw in the wooded area "along a chain link fence within the property of the school." Thus, the record evidence permitted the jury to conclude Collins, who admitted he carried the gun into the woods, possessed the firearm on school grounds.

Collins also argues that the evidence on his voluntary manslaughter conviction failed because it did not negate the reasonable hypothesis that he acted in self-defense. The record makes clear, however, that he has procedurally defaulted on this claim. Rule 5A:18. In a jury trial in which the defendant testifies, he preserves a sufficiency claim by a motion to strike at the conclusion of all the evidence or a motion to set aside the verdict. *Commonwealth v. Bass*, 292 Va. 19, 33 (2016).

Here, Collins did not move to set aside the verdict, so the only avenue for him to preserve his present sufficiency argument was his motion to strike the evidence after the parties had rested. In his initial motion to strike, Collins specifically challenged only the firearm possession

charge.  In his renewed motion to strike, Collins again contested only the firearm possession count and never mentioned the second-degree murder charge, on which the jury convicted him of the lesser-included offense of voluntary manslaughter, or his self-defense claim.  Thus, Rule 5A:18, which requires an appellant to raise an issue "with reasonable certainty," bars review of Collins's challenge to his voluntary manslaughter conviction.  *See Bowling v. Commonwealth*, 51 Va. App. 102, 106 (2007) (defendant's motion to strike failure to appear charge, which did not contest proof of notice of date of sentencing hearing, barred appellate review of that argument).  Given Collins's procedural default and his failure to invoke either of the exceptions in Rule 5A:18 to excuse the default, we cannot address his challenge to his voluntary manslaughter conviction.  *See Stacey v. Commonwealth*, 73 Va. App. 85, 93 (2021) (exceptions are not applied sua sponte).

## CONCLUSION

The trier of fact reasonably resolved contested facts establishing the firearm conviction in favor of the Commonwealth, and we have no basis for ruling otherwise.  Collins failed to preserve his sufficiency challenge to the manslaughter conviction.  Accordingly, we affirm the circuit court's judgment.

*Affirmed.*