COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Athey and Senior Judge Humphreys

DOUGLAS DELANO ADAMS

MEMORANDUM OPINION*
v.      Record No. 1699-24-3      PER CURIAM
SEPTEMBER 23, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

(Monica Tuck, Assistant Public Defender; Virginia Indigent Defense
Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Melanie D. Edge, Assistant
Attorney General, on brief), for appellee.

The trial court found that Douglas Delano Adams ("appellant") was in violation of his

probation, revoked his previously suspended sentence, and ordered that sentence to be served in

its entirety. Appellant contends that the trial court erred by finding that he absconded from

probation and by giving improper weight to certain factors at sentencing. Having examined the

briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary

because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). And

finding no error by the trial court, we affirm.

I. BACKGROUND

Pursuant to an October 2021 plea agreement, appellant pleaded no contest to one count of

abduction, in violation of Code § 18.2-47, and the matter was taken under advisement for a

period of two years. Under the agreement's terms, appellant was required to submit to

_____

* This opinion is not designated for publication. See Code § 17.1-413(A).

supervised probation. If appellant complied with the conditions of his probation, together with other special conditions, the matter was to be dismissed. If appellant violated the conditions, he was to be found guilty and sentenced accordingly. The matter was scheduled for review on October 25, 2023.

On March 7, 2023, appellant's probation officer filed a major violation report ("MVR") claiming that appellant had violated his probation conditions. Those conditions included that appellant would neither change his residence nor leave Virginia without the permission of his probation officer. As noted in the MVR, on February 7, 2022, appellant's probation officer received information that appellant had been residing in Ohio for about a month. And on August 8, 2022, the father of appellant's girlfriend reported that appellant was in North Carolina.

The MVR also stated that on February 27, 2023, appellant's probation officer received information that appellant again was residing in Ohio and had been charged with assault in Lima, Ohio. The officer confirmed the charge with the Lima Police Department. He also mailed a notice to appellant's Virginia address asking him to report to the probation office on March 2, 2023. When appellant reported on that date, he was asked about travelling to Ohio; appellant "assured the officer that he was not leaving the state of Virginia." The officer instructed appellant not to leave the Commonwealth. But on March 3, 2023, appellant's uncle informed the probation officer that as soon as appellant's March 2 appointment was over, appellant returned to Ohio.

On April 12, 2023, appellant appeared in the trial court for a hearing on his probation violations. The court found appellant in violation of the terms of his probation, convicted him of abduction, and sentenced him to six years in prison, with four years and ten months suspended. The court entered an order conditioning the suspension of appellant's sentence upon his successful completion of an indeterminate period of supervised probation not to exceed three

years, as well as five years of good behavior.  It also ordered anger management counseling and mental health treatment as special conditions of appellant's probation.

Appellant was released to supervised probation on September 8, 2023.  Among the probation conditions he agreed to fulfill were that he would: (1) report to his probation officer as instructed; (2) refrain from using controlled substances; (3) not change his residence or leave Virginia without his probation officer's permission; and (4) "not abscond from supervision."  Under the terms of this last condition, appellant affirmed that "I understand I will be considered an absconder when my whereabouts are no longer known to my supervising officer."

On November 21, 2023, appellant's probation officer filed a second MVR, reporting that appellant had tested positive for amphetamines, missed color code, and failed to report for appointments on November 8 and 13, 2023.  On November 16, 2023, appellant's probation officer received information that appellant had returned to Ohio and was using drugs "heavily."  When the officer attempted to call appellant, appellant's number had been "disconnected."  The officer confirmed that appellant was no longer living at his last known address and he was unable to locate appellant in any local jails or at the local hospital.  The MVR stated that appellant's "whereabouts . . . [were] currently unknown" and alleged violations of the above-described probation conditions.  The trial court issued a capias for appellant's arrest.

In March 2024, police arrested appellant in Ohio.  The trial court held a hearing on May 1, 2024 and found that appellant had again violated the terms and conditions of his probation.  The court revoked 14 days of appellant's previously suspended sentence and resuspended the remaining 4 years, 9 months, and 16 days on the same terms and conditions as before.

On July 8, 2024, appellant's probation officer filed a third MVR.  According to the report and supporting documentation, appellant's probation had been transferred to Ohio on May 29, 2024.  On that date, appellant met with his Ohio probation officer and said he would be residing

with his wife's parents. Appellant subsequently did not report as instructed for an appointment on June 13, 2024; he texted his Ohio probation officer later that evening to state that he had been busy with appointments. Appellant was then instructed to report to his probation officer by noon on June 18, but he texted that morning to state that he was "working and would come in later." The officer reiterated the noon deadline, but appellant did not show up. Also on June 18, appellant's mother-in-law contacted the officer and stated that appellant "was not living with her and has not been to her residence since the day he arrived in Ohio." The probation officer issued orders for appellant's arrest, but efforts to "locate him at multiple addresses" on June 21, 2024 were fruitless. Appellant's father did not know appellant's whereabouts, and appellant could not be reached at his last known telephone number, which was disconnected. The MVR concluded that "this will be [appellant's] second violation citing him with absconding" and that he was "not amenable to supervised probation." The trial court issued a capias, and appellant was arrested on July 30, 2024.

The trial court held a revocation hearing on September 4, 2024. Amanda Hefner, appellant's Ohio probation officer, testified that appellant met with her on his initial visit and signed some paperwork, but "after that [she] did not see him." Hefner explained that appellant was supposed to meet with her in person once every three months and was required to "check in with [her] monthly by phone." She explained that before issuing the violation, she checked the address where appellant was approved to live as well as "multiple" other addresses, including that of a friend of his father, his grandmother's residence, a friend's trailer, and appellant's employment address—all to no avail. Hefner also had a police officer check a local hospital for appellant. Hefner explained that she issued her violation report because appellant went "WUVAL – whereabouts unknown violator at large – because he was not reporting to the office;

he was not at the residence that he was stating that he was living at," and she had been unable to find him.

Appellant argued that "this is not an absconding"; rather, appellant had "missed an appointment" with his Ohio probation officer, and "the violation was issued . . . immediately thereafter." He also acknowledged that "perhaps he had changed his address." But although he acknowledged he might have violated some conditions of his probation—reporting to his probation officer as instructed and not changing his residence without the officer's permission—appellant contended that the evidence was insufficient to prove "that he absconded or his whereabouts were unknown." Appellant claimed he had "simply missed an appointment, and perhaps did not update his address."

The trial court disagreed and found that appellant had violated the terms of his probation, noting that Hefner had testified that appellant

> did not meet with her when he was supposed to, that they were unable to find him, and they did not know where he was. He was not at the places he was supposed to be, and they went, in my opinion, above and beyond, and checked everybody they knew related to him and associated with him, and followed the leads looking for him; could not find him, checked the hospital, could not find him; he was not there. That's absconding.

In finding that appellant "did abscond from his probation, from the Ohio probation officer," the court also found that Hefner's "testimony supports that finding." The court revoked appellant's previously suspended sentence, ordered that it be served in its entirety, and released appellant from probation.

This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Appellant argues that the trial court erred in finding the evidence sufficient to prove he absconded, rather than simply failed to report to his probation officer as instructed or changed his residence without the officer's permission.[1]

On appeal, "[w]e 'view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it.'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)). "[T]he trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Id.* (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)). And "[t]he sufficiency of the evidence to sustain an order of revocation 'is a matter within

---

[1] Appellant presents several other arguments on brief that transcend the one he made at the revocation hearing, namely, the mere sufficiency of the evidence to prove that "he absconded or his whereabouts were unknown." He advances arguments about the definition of certain statutory terms as they are used in Code § 19.2-306.1, asserts that to prove absconding requires proof of "a pattern of behavior indicative of an intent to evade supervision and the courts," and further suggests, citing the law of foreign jurisdictions, that absconding "require[s] evidence of an intent to evade the legal process." But these arguments were neither presented to, nor ruled on by, the trial court. Consequently, they are procedurally defaulted pursuant to the contemporaneous objection rule, Rule 5A:18. *See* Rule 5A:18 (providing that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling"); *Commonwealth v. Bass*, 292 Va. 19, 26 (2016) ("The rule requires litigants to make their objections 'at a point in the proceeding when the trial court is in a position not only to consider the asserted error, but also to rectify the effect of the asserted error.'" (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010))); *Maxwell v. Commonwealth*, 287 Va. 258, 265 (2014) (noting that "[f]or the [trial] court to rule intelligently, the parties must inform the . . . court 'of the precise points of objection in the minds of counsel'" (quoting *Gooch v. City of Lynchburg*, 201 Va. 172, 177 (1959))); *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (noting that "[p]rocedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial"). And although Rule 5A:18 provides exceptions to procedural default "for good cause shown or to enable this Court to attain the ends of justice," Rule 5A:18, appellant "has not invoked either exception . . . and we do not consider them *sua sponte*," *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

the sound discretion of the trial court.'" *Burford v. Commonwealth*, 78 Va. App. 170, 179 (2023) (quoting *Duff v. Commonwealth*, 16 Va. App. 293, 297 (1993)).

Code § 19.2-306(C) provides, in pertinent part, that "if [a] court, after hearing, finds good cause to believe that the defendant has violated the terms" of a previously suspended sentence, "then the court may revoke the suspension and impose a sentence in accordance with the provisions of [Code] § 19.2-306.1." In turn, Code § 19.2-306.1(A) provides a list of "technical violation[s]" that may be the basis of a violation of the conditions and terms of a suspended sentence and probation. Among those "technical violation[s]" is a defendant's failure to "maintain contact with the probation officer whereby his whereabouts are no longer known to the probation officer."[2] Code § 19.2-306.1(A)(x). Such a violation is "an absconding violation." *Commonwealth v. Delaune*, 302 Va. 644, 656 (2023).

Here, after appellant's probation was transferred to Ohio, he initially met with his probation officer, Hefner, and told her that he would be living with his wife's parents. When appellant subsequently failed to attend meetings with Hefner on two occasions, and after appellant's mother-in-law contacted Hefner to say appellant was not living with her and had not been to her home since the day he arrived in Ohio, Hefner initiated proceedings for appellant's arrest. Hefner searched for appellant at "multiple addresses" associated with him, including his mother-in-law's home, his grandmother's residence, the home of a friend of appellant's father, the trailer of one of appellant's friends, and appellant's workplace. She also sought appellant's whereabouts from his father, but appellant's father did not know where appellant was. A police officer checked the local hospital for appellant at Hefner's request, but could not locate appellant there, and Hefner tried but

---

[2] Other technical violations include those which appellant acknowledged at trial he may have committed, i.e., failure to report to the probation officer as instructed and failure to gain the probation officer's permission to change his residence. *See* Code § 19.2-306.1(A)(v) and (A)(ix).

failed to contact appellant at his last known telephone number, which had been disconnected. Hefner testified that she therefore issued a probation violation report for appellant because she had been unable to find him—that is, he was "WUVAL – whereabouts unknown violator at large." Upon this evidence, the trial court found that appellant had absconded; i.e., he had failed to stay in contact with his probation officer, Hefner, such that she no longer knew his whereabouts, despite going "above and beyond" in her efforts to locate appellant. Based on the record before us, the trial court did not abuse its discretion in making this finding.[3]

B. Revocation of the Entirety of Appellant's Suspended Sentence

Appellant argues that the trial court erred in revoking the entirety of his suspended sentence. He contends that the court abused its discretion by "improper[ly] weighing . . . the factors for consideration," failing to "properly weigh the specific circumstances of [his] case," and giving "great weight to harsh consequences, and little weight to the rehabilitative purpose of probation."

Appellant neither objected to the imposition of his previously suspended sentence at the revocation hearing nor filed any post-hearing pleadings seeking reconsideration of the trial court's decision. And he did not proffer any "specific circumstances of [his] case" at the hearing that would have weighed in favor of leniency and rehabilitation, as opposed to allegedly "harsh consequences." Accordingly, we do not address appellant's argument on this issue because it is procedurally

_____

[3] Appellant frames his assignment of error on this issue by alleging that "[t]he trial court erred by finding that [he] had committed a second technical violation" of his probation based on absconding, as per Code § 19.2-306.1(A)(x). But the trial court made no such finding of a second technical violation based on absconding. Rather, it held that appellant had "violated his probation again; he's absconded again. Second time probation violation absconding, third time really doing it because that's what brought him back on the deferred disposition violation." *See* Code § 19.2-306.1(C) (providing that, for a first violation for absconding under the statute, as appellant acknowledged below occurred during his prior period of probation, "a first technical violation based on clause . . . (x) of subsection A shall be considered a second technical violation"). We do not address this aspect of appellant's argument, as it does not address a finding actually made by the trial court. *See Scialdone*, 279 Va. at 437 (noting that an appellate court can only assess whether rulings actually made by the court below were correct).

defaulted.  *See* Rule 5A:18; *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023) (applying the contemporaneous objection rule and noting that "this Court 'will not consider an argument on appeal [that] was not presented to the trial court'" (alteration in original) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004))).

## III.  CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*